GARY J. VALERIANO (Bar No. 89644)
gjv@amclaw.com
KENNETH D. WATNICK (Bar No. 150936)
kdw@amclaw.com
ANDERSON, McPHARLIN & CONNERS LLP
444 South Flower Street
Thirty-First Floor
Los Angeles, California 90071-2901
TELEPHONE: (213) 688-0080 ♦ FACSIMILE: (213) 622-7594

FILED
CLERK, U.S. DISTRICT COURT
JUL 15 2013
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

**Attorneys for Defendant TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| PESTMASTER SERVICES, INC., California Corporation, and JEFFREY M. VAN DIEPEN, and Individual,<br><br>Plaintiffs,<br><br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation, and DOES 1 to 50, Inclusive,<br><br>Defendants. | Case No. CV13-05039-JFW(MRWx)<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441 (DIVERSITY)**<br><br>Trial Date: None |

**TO THE CLERK OF THIS COURT:**

**PLEASE TAKE NOTICE** that Defendant TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA ("DEFENDANT") hereby removes to the United States District Court, Central District of California, Western Division, the state court action styled "*PESTMASTER SERVICES, INC., a California Corporation, and JEFFREY M. VAN DIEPEN, and [sic] Individual, Plaintiffs v. TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation, and DOES 1 to 50, Inclusive, Defendants,*" bearing Case No. KC066085, which action was filed in the Superior Court of the State of California in

/ / /

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

and for the County of San Los Angeles on June 11, 2013, and served on DEFENDANT on June 17, 2013.

**GROUNDS FOR REMOVAL**

1. This Court has original jurisdiction of this action under 28 U.S.C. § 1332, on the basis of diversity, and this action may be removed by DEFENDANT pursuant to 28 U.S.C. § 1441 in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.

2. On June 11, 2013, Plaintiffs Pestmaster, Inc. and Jeffrey M. Van Diepen ("PLAINTIFFS") commenced an action in the Superior Court of the State of California in and for the County of Los Angeles, styled, "*PESTMASTER SERVICES, INC., a California Corporation, and JEFFREY M. VAN DIEPEN, and [sic] Individual, Plaintiffs v. TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation, and DOES 1 to 50, Inclusive, Defendants*," bearing Los Angeles Superior Court Case No. KC066085. A true and correct copy of the Complaint, and all other papers, process, pleadings and orders served upon DEFENDANT, is attached hereto as "Exhibit A."

3. The Complaint alleges six causes of action against DEFENDANT. The first cause of action is for breach of the implied covenant of good faith and fair dealing and is asserted by plaintiff Pestmaster, Inc. ("PESTMASTER") The second cause of action is for breach of contract and is asserted by plaintiff PESTMASTER. The third cause of action is for violation of Cal. Bus. & Prof. Code §17200, et. seq. and is asserted by plaintiff PESTMASTER. The fourth cause of action is for intentional infliction of emotional distress and is asserted by plaintiff Jeffrey M. Van Diepen ("VAN DIEPEN"). The fifth cause of action is for negligent infliction of emotional distress and is asserted by plaintiff VAN DIEPEN. The sixth cause of action is for declaratory relief and is asserted by plaintiff PESTMASTER.

/ / /

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

4. PLAINTIFFS served the complaint upon DEFENDANT on June 17, 2013. A true and correct copy of the Proofs of Service – Summons & Complaint is attached hereto as "Exhibit B." This Notice of Removal is timely filed pursuant to 28 U.S.C. 1446(b) since it is filed within 30 days of service of the Summons and Complaint on DEFENDANT.

**DIVERSITY JURISDICTION**

5. This case may be removed pursuant to 28 U.S.C. § 1441(a) because there exists complete diversity between PLAINTIFFS and DEFENDANT, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

6. Upon information and belief, PLAINTIFFS are citizens of the State of California. Complaint ¶¶ 6 and 7.

7. DEFENDANT is a citizen of Connecticut. Complaint, ¶8.

8. The citizenship of Defendant Does 1 to 50 is disregarded for removal purposes. 28 U.S.C. §1441(b)(1).

9. There exists complete diversity because PLAINTIFFS and DEFENDANT are citizens of different states.

10. The amount in controversy necessary to establish jurisdiction under 28 U.S.C. § 1332 is met because PLAINTIFFS allege damages of at least $373,136.02. Complaint, ¶¶ 47 and 51.

**VENUE**

11. 28 U.S.C. §1441(a) provides that "any civil action brought in a State may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action was pending."

12. PLAINTIFFS filed this action in the Superior Court for the County of Los Angeles. According to 28 U.S.C. §84(c)(2), this Court embraces the Superior

///

///

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

Court for the County of Los Angeles and therefore is the proper Court for the removal of this action.

DATED: July 15, 2013

ANDERSON, McPHARLIN & CONNERS LLP

By: [signature]

Gary J. Valeriano
Kenneth D. Watnick
Attorneys for Defendant TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

# EXHIBIT A

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

Ian Corzine, Esq. SBN 199642
WEST CORZINE, LLP
400 West Ventura Blvd., Suite 205
Camarillo, CA 93010
TELEPHONE NO.: (805) 388-5887 FAX NO.: (805) 384-1518

ATTORNEY FOR (Name): Defendants, Pestmaster Services, Inc., and Jeffrey M. VanDiepen

FOR COURT USE ONLY

ORIGINAL FILED
JUN 11 2013
LOS ANGELES SUPERIOR COURT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 400 Civic Ctr Plz
MAILING ADDRESS:
CITY AND ZIP CODE: Pomona CA 91766
BRANCH NAME: East District

INTERLINEATION NOTED AT TIME OF FILING

CASE NAME: Pestmaster Services, Inc. et al. v. Travelers Casualty and Surety Company of America, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: KC066085 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: H |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [X] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify)*: 6
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 6/5/13

Ian Corzine, Esq.
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

Martin Dean's ESSENTIAL FORMS™

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

EXHIBIT A

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the *primary* cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief from Late Claim
  - Other Civil Petition



Pestmaster vs. Travelers

| SHORT TITLE: Pestmaster Services, Inc. v. Travelers Casualty and Surety Co, et al | CASE NUMBER: KC066085 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

H

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES CLASS ACTION? [ ] YES LIMITED CASE? [ ] YES TIME ESTIMATED FOR TRIAL [ ] HOURS/ [X] DAYS.

RECEIVED JUN 14 2013

Item II. Indicate the correct district and courthouse location (4 steps - If you checked "Limited Case", skip to Item III, Pg. 4):

JASC - Pomona Courthouse South

Step 1: After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

Step 2: Check one Superior Court type of action in Column B below which best describes the nature of this case.

Step 3: In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

Step 4: Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|
| Auto (22) | [ ] A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | [ ] A7110 Personal Injury/Property Damage/Wrongful Death - Uninsured Motorist | 1., 2., 4. |
| Asbestos (04) | [ ] A6070 Asbestos Property Damage<br>[ ] A7221 Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| Product Liability (24) | [ ] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons<br>[ ] A7240 Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7250 Premises Liability (e.g., slip and fall)<br>[ ] A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>[ ] A7270 Intentional Infliction of Emotional Distress<br>[ ] A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |



Martin Dean's ESSENTIAL FORMS™

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Pestmaster Services, Inc. v. Travelers Casualty and Surety Co, et al | |

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|
| Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach-Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☒ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels | 2. |
| Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Pestmaster Services, Inc. v. Travelers Casualty and Surety Co, et al | |

| A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|
| Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| Other Judicial Review (39) | ☐ A6150 Other Writ/Judicial Review | 2., 8. |
| Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| Construction Defect (10) | ☐ A6007 Construction Defect | 1., 2., 3. |
| Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment<br>☐ A6123 Workplace Harassment<br>☐ A6124 Elder/Dependent Adult Abuse Case<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Pestmaster Services, Inc. v. Travelers Casualty and Surety Co, et al | |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. ☐ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☒ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. | | | ADDRESS: 21688 Gateway Center Drive |
|---|---|---|---|
| CITY: Diamond Bar | STATE: CA | ZIP CODE: 91765 | |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Los Angeles County Superior courthouse in the East District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 6/5/2013

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11 ).
5. Payment in full of the filing fee, unless fees have been waived.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

WEST CORZINE, LLP
Ian Corzine, Esq. (State Bar No. 199642)
400 West Ventura Blvd., Ste. 205
Camarillo, California 93010-9141
Tel.: (805) 388-5887
Fax: (805) 384-1518
E-mail: icorzine@westcorzinelaw.com

Attorneys for Plaintiffs PESTMASTER SERVICES, INC. and JEFFREY M. VAN DIEPEN

CASE ASSIGNED FOR ALL PURPOSES TO JUDGE BRUCE MI[illegible]
DEPT. H

ORIGINAL FILED
JUN 11 2013
LOS ANGELES SUPERIOR COURT

INTERLINEATION NOTED AT TIME OF FILING

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, East DISTRICT – Pomona COURTHOUSE

PESTMASTER SERVICES, INC., a California Corporation, and JEFFREY M. VAN DIEPEN, and Individual,

Plaintiffs,

vs.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation, and DOES 1 to 50, Inclusive,

Defendants.

Case No. KC066085 H

COMPLAINT FOR:

1. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;
2. BREACH OF CONTRACT;
3. VIOLATION OF CAL. BUS. & PROF. CODE § 17200, ET SEQ.;
4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;
5. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; AND
6. DECLARATORY RELIEF

Plaintiff PESTMASTER SERVICES, INC. ("Pestmaster") and plaintiff JEFFREY M. VAN DIEPEN ("Van Diepen"), and hereafter collectively, "plaintiffs," allege as follows on information and belief, formed after an inquiry reasonable under the circumstances, which allegations are likely to have evidentiary support after appropriate investigation and discovery:

/ / /

/ / /

West Corzine

I.

## INTRODUCTION

1. This is an insurance coverage action concerning the rights and obligations of plaintiffs Pestmaster and Van Diepen (collectively, "plaintiffs"), defendant TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA ("Travelers"), and DOES 1 to 50, inclusive, (collectively, "plaintiffs"), under a certain crime liability insurance policy issued by defendants for the policy periods of 12/23/10 – 12/23/11 and 12/23/11 – 12/23/12.

2. Plaintiffs are insureds under the subject policy. Among other coverages, the subject policy insured plaintiffs against risk of loss to their money, securities, and other property by reason of employee theft, forgery, counterfeiting, computer crime, and other fraud. Notwithstanding this coverage, and the inapplicability of any exclusions in the subject policy, defendants failed and refused to cover substantial a substantial monetary loss of plaintiffs occasioned by theft, forgery, counterfeiting, computer crime, and / or other fraud. As a result, plaintiffs have suffered in excess of millions of dollars in covered losses, and continue to suffer losses to this day. Defendants have breached the subject policy and tortiously breached the implied covenant of good faith and fair dealing. Thus, the subject policy is without monetary limitation and defendants are liable to plaintiffs for all consequential, punitive damages, and attorney fees and costs.

II.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, § 10, because this case is a cause not given by statute to other trial courts.

4. This Court has exclusive jurisdiction over the claims asserted and each of the defendants because each are individuals, associations, or corporations that are either based in, authorized or registered to conduct, or in fact do conduct,

substantial business in the State of California. Each of the defendants has sufficient minimum contacts with California, or otherwise intentionally avail themselves of the markets within California, through collecting monies, entering into contracts and / or distributing their products or services in California to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice. No state or federal regulatory agency has either primary, exclusive, or any jurisdiction over the claims at issue herein and / or is able to provide the complete relief prayed for in this matter.

5. Venue is proper in this County as the acts upon which this action is based occurred in part in this County. One of the plaintiffs resides in this County, and one or more of the defendants received substantial compensation and profits from entering into agreements and / or the sale of their products or services to persons located in this County, caused misrepresentations to be disseminated, entered into transactions and / or breached agreements in this County. Thus, defendants' liability arose in part in this County.

West Corzine

## III.

## PARTIES

6. At all times herein mentioned, plaintiff Pestmaster was, and is, an active corporation duly organized and existing under and by virtue of the laws of the State of California, having its principal place of business in the County of Inyo, State of California.

7. At all times herein mentioned, plaintiff Van Diepen was, and is, President and CEO of Pestmaster, and an individual over the age of 18 years and resident of County of Inyo, State of California.

8. Plaintiffs are informed and believe, and on that basis allege, that defendant Travelers is an insurance company existing under the laws of the State of Connecticut. At all times relevant hereto, plaintiffs are informed and believe, and on that basis allege, that Travelers was duly authorized, through its respective

agents, to underwrite insurance policies covering risks in the State of California.

9. Plaintiffs are ignorant of the names of the defendants sued herein as DOES 1 to 50, and thus sue these defendants by fictitious names. Plaintiffs will seek leave to amend this complaint to allege their true names and capacities when ascertained. Plaintiffs allege on information and belief that each of the said fictitiously-named defendants is responsible in some manner for the occurrences alleged in this complaint and that the injuries sustained by plaintiffs were proximately caused by the actions and / or omissions of those defendants.

## IV.

## BACKGROUND FACTS

10. Between approximately August 2009 and June 2011, Pestmaster utilized HR Connections, Inc. ("HRC") for human resources services per written contract.

11. Between approximately October 2009 and June 2011, HR's affiliated company, Priority 1 Resource Group, Inc. ("Priority 1"), processed Pestmaster's payroll.

12. Travelers issued a crime liability policy, with policy no. 105726762, to plaintiffs, which plaintiffs are informed and believe was effective for the period of December 23, 2010 through December 23, 2011 and December 23, 2011 through December 23, 2012. A true and correct copy of the subject crime liability policy and applicable declaration page(s) are attached hereto at Exhibit A.

13. Coverage of the subject policy included but was not limited to the following:

TRAVELERS

Wrap+

CRIME

CRIME TERMS AND CONDITIONS

PLEASE READ ALL TERMS AND CONDITIONS CAREFULLY

CONSIDERATION CLAUSE

IN CONSIDERATION of the payment of the premium stated in the Declarations, and subject to the Declarations and pursuant to all the terms, conditions, exclusions and limitations of this Crime Policy, the Company will pay the Insured for direct loss that the Insured sustains which is directly caused by a Single Loss taking place at any time and which is Discovered by the Insured during the Policy Period or during the Extended Period to Discover Loss pursuant to the terms set forth in Section V. CONDITIONS A. GENERAL CONDITIONS 3. Extended Period to Discover Loss.

I. INSURING AGREEMENTS

This Crime Policy provides coverage under each of the following Insuring Agreements. Notwithstanding the aforesaid, if ITEM 5 of the Declarations indicates that any Insuring Agreement is "Not Covered," then such Insuring Agreement and any other reference thereto is deemed to be deleted from this Crime Policy



West Corzine

A. FIDELITY

1. Employee Theft

The Company will pay the Insured for the Insured's direct loss of, or direct loss from damage to, Money, Securities and Other Property directly caused by Theft or Forgery committed by an Employee, whether identified or not, acting alone or in collusion with other persons.

2. ERISA Fidelity

The Company will pay the Insured for direct loss of, or direct loss from damage to, Money, Securities and Other Property that belongs to an Employee Benefit Plan, directly caused by Theft or Forgery committed by a Fiduciary, whether identified or not, acting alone or in collusion with other persons.

3. Employee Theft of Client Property

The Company will pay the Insured for direct loss of, or direct loss from damage to, Money, Securities and Other Property sustained by the Insured's Client, directly caused by Theft or Forgery committed by an identified Employee.

B. FORGERY OR ALTERATION

The Company will:

1. pay the Insured for the Insured's direct loss directly caused by Forgery or alteration of, on or in any written Covered Instruments that are:

a. made by, drawn by, or drawn upon, the Insured, or purport to have been so made or drawn; or

b. made or drawn by one acting as the Insured's agent, or purport to have been so made or drawn; and

2. reimburse the Insured for reasonable legal defense expenses that the Insured has paid if the Insured is sued for refusing to pay any written Covered Instrument under this Insuring Agreement B. on the basis that it has been Forged or altered. Reimbursement of such legal expenses is conditioned upon the Insured's receipt of the Company's prior written consent to defend against such suit. The amount of any legal expenses reimbursed under Insuring Agreement B. is in addition to the applicable Single Loss Limit of Insurance for Insuring Agreement B.

A signature that is a mechanical or electronic reproduction of a handwritten signature produced by a mechanical check-writing machine or a computer printer is treated the same as a handwritten signature. An Electronic Signature is not treated the same as a mechanical or electronic reproduction of a handwritten signature and is not a Forgery under this Insuring Agreement B.

For purposes of this Insuring Agreement B., the term "check" includes a "substitute check" as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

F. COMPUTER CRIME

1. Computer Fraud

The Company will pay the Insured for the Insured's direct loss of, or direct loss from damage to, Money, Securities and Other Property directly caused by Computer Fraud.

2. Computer Program and Electronic Data Restoration Expense

The Company will pay the Insured for reasonable Restoration Expense that the Insured incurs to restore or replace damaged or destroyed Computer Programs or Electronic Data stored within the Insured's Computer System directly caused by a Computer Violation.

For purposes of this Insuring Agreement F.2., a Single Loss involving Computer Program and Electronic Data Restoration Expense applies to reasonable Restoration Expense incurred by the Insured between the time the Insured Discovers the damage or destruction and the time the

///

Insured's Computer Program or Electronic Data is restored to the level of operational capability that existed immediately preceding a Computer Violation. Recurrence of the same Computer Virus after the Insured's Computer Program or Electronic Data has been restored constitutes a separate Single Loss.

Payment of reasonable Restoration Expense applies:

a. only to Computer Programs and Electronic Data which the Insured owns or leases, or for which the Insured is legally liable; and

b. only if the Insured is unable to reproduce such Computer Programs or Electronic Data from back-up data copies.

Payment of reasonable Restoration Expense will be made to the Insured upon the completion of the restoration of the damaged or destroyed Computer Programs or Electronic Data.

If a Single Loss is covered under both Insuring Agreements F.1. and F.2., then only the Retention for a Single Loss under Insuring Agreement F.1. will be applicable and the payment of Restoration Expense under Insuring Agreement F.2. will be part of, and not in addition to, the Single Loss Limit of Insurance for Insuring Agreement F.1.

G. FUNDS TRANSFER FRAUD

The Company will pay the Insured for the Insured's direct loss of Money and Securities contained in the Insured's Transfer Account directly caused by Funds Transfer Fraud.

14. In or about early June 2011, an agent of the U.S. Internal Revenue Service ("IRS") visited the offices of Pestmaster and demanded payment of over $300,000.00 in employee withholding taxes that the IRS claimed were unpaid. Repeated written IRS demands followed.

15. Plaintiffs and their employees were greatly shocked. They paid, and therefore, relied on, HRC and Priority 1 to accurately and timely pay their company's federal employee withholding taxes, inter alia.

16. Plaintiffs conducted an investigation into the matter and learned HRC and / or Priority 1 agents and employees, acting alone or in collusion with others, stole, embezzled, committed larceny, forgery, fraud, electronic and / or telephonic funds transfer fraud, and / or computer fraud, which resulted in the failure to pay the IRS on behalf of Pestmaster approximately $410,427.25.

17. On or about June 13, 2011, Pestmaster provided defendants written notice of its claim under the subject policy.

18. On or about June 14, 2011, defendants sent plaintiffs written acknowledgement of the claim and enclosed a proof of loss form.

///

19. Between approximately June 14, 2011 and August 2, 2011, defendants took no action on the subject claim in violation of California Code of Regulations tit.10, § 2695.5(e).

20. On or about August 2, 2011, plaintiffs provided defendants with a completed proof of loss, signed by Van Diepen.

21. On or about August 10, 2011, defendants told plaintiffs' insurance broker that the August 2, 2011 proof of loss was insufficient. Plaintiffs' insurance broker disclosed this information to plaintiffs. The factors on which defendants relied to determine that the proof of loss was allegedly insufficient were immaterial to coverage of the claim, and therefore, defendants violated California Code of Regulations tit.10, § 2695.7(d).

22. On August 26, 2011, plaintiffs provided defendants with an amended proof of loss, to comply with defendants' directives.

23. Between approximately August 10, 2011 and December 6, 2011, defendants took no action on the subject claim in violation of California Code of Regulations tit.10, § 2695.5(e).

24. On or about December 6, 2011, defendants sent plaintiffs correspondence stating inter alia, "This letter serves to acknowledge receipt of the two Proofs of Loss Pestmaster Services, Inc. has submitted." The correspondence set forth portions of the subject policy's coverages and exclusions verbatim and requested documentation to support an "Employee Theft" or "Funds Transfer Fraud" claim.

25. Defendants did not accept or deny coverage of the subject claim in the December 6, 2011 letter. This failure violates California Code of Regulations tit.10, § 2695.7(b), which requires insurers to accept or deny coverage within 40 days of proof of loss submission. Further, if defendants required more time to make the coverage decision, plaintiffs were unaware thereof. Defendants failed to comply with California Code of Regulations tit.10, § 2695.7(c)(1), which requires that, every 30 days, an insurer to give an insured written notice of a request for additional time

to make the coverage determination.

26. Plaintiffs retained counsel to uncover evidence to further support their claim. Plaintiffs encountered substantial difficulties receiving written documentation from HRC and Priority 1 due to the fact that the agents and employees of these entities were seeking to protect themselves from criminal liability.

27. Between approximately December 6, 2011 and July 23, 2012, plaintiffs received no contact from defendants. They received no inquiries about additional documents. They received no notice of intent to terminate the claim investigation or close the claim file. They received no notice of actual closure of the claim file. In sum, seven months passed before plaintiffs received any contact from defendants about the subject claim. Thus, plaintiffs contend defendants committed an additional violation of California Code of Regulations tit.10, § 2695.7(d).

28. Finally, on or about July 19, 2012, Van Diepen, frustrated about defendants' lack of any investigation of the claim and no contact, asked defendants' agent or employee, Mary Anne Veniegas, about the status of the subject claim. Van Diepen was in Veniegas' presence as a result of another, unrelated claim plaintiffs made concerning the employers' liability portion of the subject policy. Van Diepen told Veniegas plaintiffs had given notice of the subject claim to defendants approximately one year before and had not yet heard back from defendants about whether they accepted or denied the claim. Veniegas acted embarrassed. She accessed defendants' computers through her laptop and reviewed plaintiffs' crime liability policy, insurance application, and other relevant information about the subject claim. Then, Veniegas stated: "*Jeff, I don't know what has happened here, but you do have coverage for this type of crime.*" Van Diepen asked, "*Are you sure?*" Veniegas stated: "*Jeff, I'm 99% sure that you are covered for this loss.*"

29. For an inexplicable reason, on or about July 23, 2012, defendants sent plaintiffs another written acknowledgement of claim with enclosed proof of loss. Defendants required plaintiffs to fill out yet another proof loss, violating California Code of



West Corzine

Regulations tit.10, § 2695.7(d), which prohibits insurers from persisting in "seeking information not reasonably required for or material to the resolution of a claim dispute."

30. On or about this same day, July 23, 2012, Veniegas sent defendants information from plaintiffs setting forth detailed calculations of the amount the IRS alleged plaintiffs owed in employee withholding taxes.

31. On or about August 22, 2012, plaintiffs inquired with defendants regarding the status of the subject claim. Defendants responded with e-mail correspondence stating, "Jeff, this file remains open at this time."

32. On or about September 26, 2012, plaintiffs sent defendants impassioned correspondence demanding that the claim be accepted or denied. Further, plaintiffs demanded copies of "ALL documentation, endorsements, amendments, or pertinent information" on the subject claim.

33. Defendants did not promptly respond to plaintiffs' requests.

34. On or about October 17, 2012, plaintiffs' counsel telephoned defendants' representative. Defendants' representative told plaintiffs' counsel that defendants had closed the subject claim file.

35. On or about that same day, October 17, 2012, plaintiffs' counsel sent correspondence to defendants and enclosed the August 26, 2011 proof of loss. Plaintiffs' counsel referenced a conversation with defendants' representative in which defendants' representative stated Travelers first received notice of the subject claim in June or July 2012. Confused, plaintiffs' counsel requested in the letter that defendants review the subject claim file to determine when defendants first received notice of the subject claim. Plaintiffs' counsel again requested defendants tell them "how Traveler's intends to proceed with the processing of this claim."

36. On or about October 18, 2012, plaintiffs' counsel sent to defendants additional correspondence, recounting defendants' representative's telephonic statement that

defendants closed the file on the subject claim. Plaintiffs' counsel asked, "Did Travelers ever inform Pestmaster that it was closing the file on this matter or denying the claim?"

37. Later, on or about October 18, 2012, defendants' representative answered this question with a resounding, "No." He admitted in correspondence that defendants had not given plaintiffs notice of closure of the subject claim and had not accepted or denied the claim. He attempted to explain defendants' conduct by stating defendants unilaterally closed their claim file on the subject claim and opened a new claim file on the subject claim when Van Diepen inquired as to the claim's status on July 19, 2012.

38. Thereafter, on or about October 18, 2012, plaintiffs' counsel sent defendants correspondence informing them that plaintiffs had never filed a "second claim." He requested defendants re-open the original claim file and allow plaintiffs to submit additional information to support coverage of the subject claim.

39. On or about October 22, 2012, plaintiffs' counsel requested in correspondence that defendants set forth their position on the subject claim in writing.

40. Later, on or about October 22, 2012, defendants' representative sent plaintiffs' counsel correspondence stating that he was waiting to consult with his "Home Office Co-manager" and would get a response to plaintiffs' counsel's October 18, 2012 correspondence when he had it.

41. Plaintiffs' counsel sent follow-up correspondence to defendants' representative on or about November 1, 2012. He concluded the correspondence with, "What is Travelers position with respect to the issues referenced below [?]"

42. On or about November 8, 2012, plaintiffs' counsel sent defendants correspondence stating, "It has now been two and a half weeks since your correspondence below and a full three weeks since my email to you below requesting clarification on Travelers position with respect to the underlying claim." He again demanded defendants' then position on the subject claim.

West Corzine

43. Later, on or about November 8, 2012, defendants' representative telephoned plaintiffs' counsel and informed him that defendants had not yet formulated their position on the claim.

44. On or about November 16, 2012, plaintiffs' counsel sent defendants substantial information on the subject claim. He sent spreadsheets detailing amounts HRC and /or Priority 1 stole, embezzled, committed larceny, forgery, fraud, electronic and / or telephonic funds transfer fraud, and / or computer fraud to obtain. Additionally, plaintiffs' counsel provided defendants with a description of the background facts and financial relationships between the parties.

45. By November 30, 2012, plaintiffs had not yet heard back from defendants. Plaintiffs' counsel wrote defendants additional correspondence demanding defendants state whether they were going to accept or deny coverage.

46. Later, on or about November 30, 2012, defendants' representative responded by e-mail, "I am reviewing the information along with my Home Office co-manager and will advise as soon as our coverage determination is made."

47. Plaintiffs had not heard back from defendants for weeks. Nonetheless, on or about December 20, 2012, plaintiffs' counsel sent defendants correspondence stating:

> Please see attached. Pestmaster was successful at getting the IRS to waive their claims for penalties. Consequently, the amount necessary to payoff the remaining tax obligations associated with the theft of funds was reduced to $373,136.02. Unfortunately, due to Travelers failure to act promptly to provide coverage for this claim. Pestmaster was required to liquidate a substantial part of its business assets in order to pay the amounts owed to the IRS. Travelers lack of action on this claim has damaged and is continuing to damage Pestmaster.
>
> [¶] It has been almost three week since your correspondence below. What additional information does Travelers need, if any, to promptly take action on this claim.

48. On or about December 21, 2012, in correspondence, defendants' representative claimed that defendants requested additional information on the subject claim on December 6, 2011 "and did not receive the requested information until November 16, 2012[.]" He concluded with, "we are doing a complete and through [sic] review of the documents and will provide you with a written response, no later than Friday, January 4, 2013."

49. On or about January 4, 2012, defendants sent plaintiffs their coverage denial letter. After recounting defendants' version of the subject claim's history, defendants concluded, "Based on our review of the updated both of the Proofs of Loss which have been submitted and the additional information that was submitted by you in November 2012, Travelers must respectfully disclaim coverage under the Policy." The denial was based primarily on defendants' conclusion that agents and employees of HRC and / or Priority 1 were not policy-defined "employees" of plaintiffs. The letter included no substantive analysis on whether or not coverage existed pursuant to the subject policy's forgery, premises, transit, computer crime, funds transfer fraud, and claim expense coverages. Further, it criticized plaintiffs' conduct in discharging their legal obligations to pay taxes, stating, "the Insured has breached its duty to mitigate damages by paying the taxes due which would have avoided the assessment of interest, fines, and penalties."

50. To summarize, plaintiffs commenced the subject claim on June 13, 2011. They did not receive defendants' coverage determination until almost a year and a half later. By defendants' own written admission, the coverage determination was based solely on review of documents available in August 2011 and background and property loss information plaintiffs provided in November 2012. During this year and a half period, defendants failed to interview plaintiffs or other witnesses about the subject claim. They failed to provide plaintiffs notice of intent to close the claim file. They failed to provide defendants notice of closure of the subject claim file. They failed to provide a coverage determination within 40 days. They failed to

West Corzine

provide plaintiffs with requests for additional time to make the coverage determination. They concluded this period with a non-substantive denial of the subject claim.

51. On or about May 15, 2013, plaintiffs' counsel sent defendants correspondence requesting defendants re-open the subject claim and pay the benefits due. The basis for the request was a summary of plaintiffs' counsel's interview with an employee of HRC and / or Priority 1 who had observed the fraudulent conduct, which resulted in plaintiffs' $373,136.02 tax payment. This witness employee observed at least one other HRC and / or Priority 1 managing employee use HRC and / or Priority 1 computers on multiple occasions to perform on-line electronic transfers of plaintiffs' funds held at banking institutions to HRC and / or Priority 1 banking institution accounts. The witness employee stated that the managing employee then used the funds transferred from plaintiffs' bank accounts for personal purposes. Plaintiffs' counsel's letter explained in detail how these facts made, at the very least, the computer crime coverage of the subject policy applicable.

52. On or about May 22, 2013, defendants sent plaintiffs correspondence, responding to the May 15, 2013 letter. Defendants explained, "there is nothing in your letter which would cause us to change our position which was relayed in our letter of January 4, 2013 to the insured's counsel, Jim Goniea of Wiggins and Dana, LLC, namely, that the factual circumstances presented by the claim is not covered by the referenced policy."

V.

FIRST CAUSE OF ACTION

(Breach of the Implied Covenant of Good Faith and Fair Dealing by Pestmaster Against Defendants Travelers and Does 1 - 25, Inclusive)

53. Plaintiffs incorporate in full each of the allegations in paragraphs one through 52 as if set forth fully herein.

54. Defendants' subject insurance policy issued to plaintiffs contains an implied covenant of good faith and fair dealing.

55. Defendants' tortiously, and in bad faith, breached the implied covenant of good faith and fair dealing in the subject policy by engaging in at least the following unreasonable and wrongful acts:

a. Failing to adopt and implement reasonable standards for the prompt, thorough, and accurate investigation and processing of insurance claims;

b. Failing to attempt in good faith to effectuate prompt, fair, complete, and equitable settlement of claims;

c. Unreasonably delaying a reasonable investigation of the subject claim

d. Failing to perform an adequate, objective, and reasonable investigation of the subject claim

e. Conducting an investigation of the subject loss with an intent to minimize defendants' exposure as opposed to adequately and completely paying for plaintiffs' actual losses;

f. Failing to recognize that all of the subject loss was caused by insured risks under the subject policy and refusing to fully compensate plaintiffs for all insured losses;

g. Failing to make coverage and loss valuation decisions and determinations with the benefit of unbiased and / or qualified professionals;

h. Failing to comply in full with the applicable provisions of California law including, but not limited to, California Insurance Code § 790.03;

i. Failing to produce "claim-related documents" in accordance with California Insurance Code § 2071;

j. Failing to comply with the provisions of California Code of Regulations tit.10, §§ 2695.4, 2695.5, and 2695.7, inter alia;

k. Failing to properly and accurately advise plaintiffs about the applicable provisions of the subject insurance policy;

West Corzine

l. Unreasonably delaying benefits due under the subject policy;

m. Misrepresenting and otherwise misconstruing the applicable provisions of the subject insurance policy, defendants' insurance claim handling guidelines, and other applicable claims handling standards and practices;

n. Failing to implement a fair and reasonable standard practice regarding adjustment of the subject claim;

o. Failing to affirm or deny coverage of the subject claim within a reasonable time after proof of loss requirements were completed and submitted by plaintiffs;

p. Compelling plaintiffs to institute litigation to recover amounts due under the subject policy;

q. Failing to hire competent professionals to determine the extent and scope of the subject loss;

r. Failing to be truthful regarding the results of defendants' investigation of the subject insurance claim;

s. Failing to adjust the subject loss on the merits; and

t. Denying plaintiffs' claim with the intention of coercing plaintiffs into foregoing benefits due under the subject policy.

56. Defendants have engaged in these acts with the intent to harm plaintiffs and to place their interests above those of plaintiffs.

57. As a direct and proximate result of defendants' bad faith conduct, plaintiffs have suffered, and continue to suffer, damages in an amount subject to proof at trial but which exceed the jurisdictional minimum of this Court. Additionally, plaintiffs are entitled to all direct, indirect, consequential, and special compensatory and punitive damages as a result of defendants' bad faith, malicious, oppressive, and fraudulent misconduct.

58. As a result of the intentional, malicious, oppressive, deliberate, deceitful, vexatious, and fraudulent conduct of defendants, plaintiffs have been damaged in sums to be

West Corzine

proven at trial, and plaintiffs are entitled to an award of attorney fees, in accordance with law, also pursuant to Brandt v. Sup. Ct., 37 Cal. 3d 813, 817 (Cal. 1985), and prejudgment interest and exemplary and punitive damages against defendants in conformity with California Civil Code § 3294, or as provided by law, in an amount according to proof to punish or set an example of defendants and to deter such conduct in the future.

59. Plaintiffs are specifically entitled to exemplary and punitive damages because:

a. Plaintiffs are informed and believe, and on that basis allege, that defendants had advanced knowledge of the unfitness of its agents and employees, including but not limited to Michael A. Koester and Michael B. Mulvey, Jr., and employed these agents and employees with a conscious disregard of the rights of plaintiffs;

b. Plaintiffs are informed and believe, and on that basis allege, that defendants authorized or ratified their employees' malicious, oppressive, and fraudulent conduct, including but not limited to, to wit: Mr. Mulvey summarily accepting and ratifying Mr. Koester's baseless coverage decisions, without adequate investigation or discussion with witnesses, Mr. Koester closing the claim file on the subject claim without any notice to plaintiffs, Mr. Koester requiring plaintiffs to submit multiple proofs of loss for inexplicable reasons, and Mr. Koester attempting to construe plaintiffs' conduct as requesting to open a second claim with an intent to cover up his own failures to investigate the claim and provide plaintiffs notice of an intent to close the claim; and

c. Plaintiffs are informed and believe, and on that basis allege, that defendants were personally guilty of malice, oppressive, or fraud for including but not limited to, failing to adopt standards, guidelines, and rules that require the prompt investigation and settlement of their insureds' claims which will result in greater damage if they are not immediately resolved.

///

West Corzine

VI.

SECOND CAUSE OF ACTION

(Breach of Contract by Pestmaster Against Defendants Travelers and Does 1 - 25, Inclusive)

60. Plaintiffs incorporate in full each of the allegations in paragraphs one through 59 as if set forth fully herein.

61. Defendants are required under the subject policy to pay for all of the insured's property damage, and associated loss, as a result of the subject claim.

62. Defendants have breached their contractual obligations to plaintiffs by their failure and refusal to acknowledge and undertake their duties to pay for all of the damages and associated losses resulting from the subject claim.

63. As a direct and proximate result of defendants' breaches of the subject insurance contract, plaintiffs have suffered, and will continue to suffer, damages in an amount subject to proof at trial but which exceeds the jurisdictional minimum of this Court. Additionally, plaintiffs are entitled to all direct, indirect, consequential, special, and compensatory damages as a result of defendants' continuing breaches of the subject insurance contract.

VII.

THIRD CAUSE OF ACTION

(Violation of Cal. Bus. & Prof. Code § 17200, et seq., by Pestmaster Against Defendants Travelers and Does 1 - 25, Inclusive)

64. Plaintiffs incorporate in full each of the allegations in paragraphs one through 63 as if set forth fully herein.

65. Defendants' acts and practices as detailed above constitute acts of unfair competition. Defendants have engaged in unlawful, unfair, or fraudulent business acts and / or practices within the meaning of California Business & Professions Code §§ 17200, et seq. Defendants have engaged in unfair, deceptive, untrue, and / or misleading advertising regarding their intent to pay covered losses.

West Corzine

66. Defendants have engaged in "unlawful" business acts and / or practices by engaging in the conduct set forth above. These business acts and practices violated numerous provisions of law, including, inter alia, California Insurance Code §§ 790.03 and 2071, California Civil Code §§ 1565 et seq., California Civil Code §§ 1709, the Consumers Legal Remedies Act, California Civil Code §§ 1750, et seq., as well as operate as a systemic breach of agreements. Plaintiffs reserve the right to identify additional violations of law as further investigation warrants.

67. Through the above-described conduct, Defendants have engaged in "unfair" business acts or practices in that the justification for such actions and the refusal to notify the general public of the true facts, either in the past or presently, based on the business acts and practices described above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and / or offends public policy, is immoral, unscrupulous, unethical and offensive, or causes substantial injury to consumers.

68. By engaging in the above-described conduct, defendants have engaged in a "fraudulent" business act or practice in that the business acts and practices described above had a tendency and likelihood to deceive similarly-situated insureds and the general public. That conduct includes the following unlawful, unreasonable, fraudulent, malicious, oppressive, and unfair business acts and practices:

a. devising and implementing a scheme to deny and/or underpay claims to further support defendants' own economic interests to the detriment of plaintiffs;

b. intentionally denying and/or low balling of the claims;

c. intentionally misleading the insureds by assurance that claims receive careful consideration of defendants; and

d. intentionally misleading the insureds that defendants' goal is to provide the insureds with the best possible service.

69. Defendants need only to have violated one of the three provisions set forth above to be strictly liable under this cause of action.

70. The above-described unlawful, unfair, or fraudulent business acts and practices engaged in by defendants continue to this day and / or present a threat of irreparable harm to the general public. Defendants have failed to publicly acknowledge the wrongfulness of their actions and provide the complete relief required by the statute.

71. Pursuant to California Business & Professions Code § 17203, plaintiffs, on behalf of the general public, seek a temporary, preliminary and / or permanent order from this Court prohibiting defendants from refusing to continue to engage in the unlawful, unfair, or fraudulent business acts or practices set forth in this complaint and from failing to fully disclose the true facts as set forth herein, and or ordering defendants or their representatives to stop misleading the public and engage in a corrective campaign, particularly in light of the public misperception created by defendants' and/or their representatives' misstatements and omissions of material fact, as well as provide appropriate equitable monetary relief as the Court deems just and appropriate to all persons with a vested interest therein.

72. Plaintiffs, on behalf of the general public, also request the Court issue an order granting the following injunctive and/or declaratory relief:

a. That a judicial determination and declaration be made of the rights of the general public, and the corresponding responsibilities of defendants;

b. That defendants' representatives be ordered to cease and desist from making misrepresentations to the general public; and

c. That defendants be required to provide equitable monetary relief to the members of the general public adversely affected by the practices at issue.

///

///



West Corzine

VIII.

## FOURTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress by Van Diepen Against Defendants Travelers and Does 1 - 50, Inclusive)

73. Plaintiffs incorporate in full each of the allegations in all paragraphs of the complaint as if set forth fully herein.

74. Plaintiffs are informed and believe, and based thereon, allege that Travelers agents and employees and / or defendants have intentionally engaged in outrageous conduct designed to inflict severe emotional distress on Van Diepen by, among other things:

a. Intentionally and unreasonably failing to accept or deny coverage of the subject claim within approximately one and a half years, while knowing that IRS governmental proceedings against plaintiffs are causing severe mental and physical distress to Van Diepen;

b. Intentionally and unreasonably failing to perform any investigation of the subject claim, while knowing that Van Diepen has no responsibility for the subject loss and the subject loss is exactly the type of loss the subject policy is designed to indemnify against;

c. Intentionally and unreasonably criticizing Van Diepen's conduct in discharging his legal obligations to pay taxes by stating, "the Insured has breached its duty to mitigate damages by paying the taxes due which would have avoided the assessment of interest, fines, and penalties";

d. Intentionally and unreasonably ignoring evidence offered by plaintiffs supporting coverage of the subject claim with reckless disregard of Van Diepen's severe mental and physical distress; and

e. Intentionally and unreasonably adopting a "wait and see" approach to the claim handling by purposely terminating investigation of the subject claim without notice to plaintiffs and "waiting" and "seeing" if plaintiffs would just



West Corzine

"go away" with reckless disregard of Van Diepen's severe mental and physical distress.

75. Defendants' extreme and outrageous conduct was directed at Van Diepen and intended to cause Van Diepen severe emotional distress or was performed with "reckless disregard of the probability of causing" such distress.

76. Plaintiffs are informed and believe and, based thereon, allege that because of the substantial delays causing by defendants in handling the subject claim, Travelers agents and employees and / or defendants, through the authorized and / or ratified acts of its officers, agents, employees, claims personnel, adjusters and the like, set out to find some way to refuse and decline to perform, dishonor, and disavow defendants' obligations, and the provision of benefits and rights due and owing to plaintiffs under the subject policy.

77. Plaintiffs are informed and believe and, based thereon, allege that defendants have known that they occupy a superior position of financial strength and bargaining power over plaintiffs.

West Corzine

78. Plaintiffs are informed and believe and, based thereon, allege that defendants knew or should have known that their actions would expose plaintiffs to substantial monetary losses, and would subject Van Diepen to severe emotional distress.

79. Plaintiffs are informed and believe and, based thereon, allege that defendants exploited their position of relative superiority over plaintiffs in order to deny them the benefits that were due under the subject policy and for which they were dependent upon defendants.

80. Plaintiffs are informed and believe and, based thereon, allege that defendants knew that their course of conduct would likely result in the infliction of severe emotional distress upon Van Diepen.

81. Plaintiffs are informed and believe and, based thereon, allege that defendants knew that defendants knew that plaintiffs were in a position of economic and emotional vulnerability.

82. Plaintiffs are informed and believe and, based thereon, allege that in August 2011 defendants knew that the payment of IRS back taxes would be costly.

83. Plaintiffs are informed and believe and, based thereon, allege that defendants knew plaintiffs were dependent upon defendants to honestly, fairly, and conscientiously perform their duties under the law and the subject policy.

84. Plaintiffs are informed and believe and, based thereon, allege that defendants' conduct was intentional and malicious and done for the purpose of causing Van Diepen to suffer severe humiliation, mental anguish, and emotional and physical distress.

85. Plaintiffs are informed and believe and, based thereon, allege that defendants engaged in the conduct alleged herein with the knowledge that it would cause severe humiliation, mental anguish, and emotional and physical distress to Van Diepen and was done with a wanton and reckless disregard of the consequences to Van Diepen.

86. As a direct and proximate result of the acts alleged above, Van Diepen has suffered humiliation, mental anguish, and severe emotional and physical distress, has been injured in mind and body, and has suffered damages in an amount exceeding the jurisdictional minimum of this Court and to be proven at trial.

87. Plaintiffs are informed and believe and, based thereon, allege that the aforementioned acts of defendants as alleged above:

a. Were committed with an intent to vex, injure, and annoy in a manner that was malicious within the meaning of California Civil Code § 3294;

b. Constituted despicable conduct committed with a willful and conscious disregard for plaintiffs' rights in a manner that was oppressive, fraudulent, and malicious within the meaning of California Civil Code § 3294; and

c. Were authorized and / or ratified by an officer, director, or managing agent of defendants.

///

West Corzine

IX.

FIFTH CAUSE OF ACTION

(Negligent Infliction of Emotional Distress by Van Diepen Against Defendants Travelers and Does 1 - 50, Inclusive)

88. Plaintiffs incorporate in full each of the allegations in paragraphs one through 87 as if set forth fully herein.

89. Defendants owed a duty of care to Van Diepen, President and CEO of Pestmaster, as a result of the contractual relationship between Pestmaster and defendants.

90. Defendants breached their duty of care by acting with reckless disregard for Van Diepen's emotional state and susceptibility to emotional distress and performing the wrongful and negligent acts alleged above.

91. Defendants knew, or should have known, that their failure to exercise due care in the performance of the subject policy would cause Van Diepen to suffer severe emotional and physical distress.

92. Defendants proximately caused injuries to Van Diepen. Van Diepen's severe emotional and physical distress was foreseeable by all defendants, and defendants' conduct was a substantial factor in bringing about Van Diepen's damages in an amount exceeding the jurisdictional minimum of this Court and to be proven at trial.

X.

SIXTH CAUSE OF ACTION

(Declaratory Relief by Pestmaster Against Defendants Travelers and Does 1 - 25, Inclusive)

93. Plaintiffs incorporate in full each of the allegations in paragraphs one through 92 as if set forth fully herein.

94. Defendants are required under the subject policy to pay for all of the damage, and other associated losses, resulting from insured risks covered by the subject policy.

95. Defendants have wrongfully failed and refused to acknowledge, accept, or

undertake their obligation under the subject policy and pay for the losses of plaintiffs.

96. An actual and justiciable controversy presently exists between plaintiffs and defendants concerning defendants' obligation to pay for damage and associated losses stemming from the subject property.

97. Under George F. Hillenbrand, Inc. v. Ins. Co. of North America, 104 Cal. App. 4th 784, 802 (Cal. Ct. App. 3d 2002), declaratory relief is an appropriate means for resolving insurer / insured policy coverage disputes.

98. In this action, a judicial declaration is necessary and appropriate at this time, and under the circumstances alleged above, in order that plaintiffs may ascertain their rights under the subject policy. Such a declaration is particularly appropriate under these circumstances because plaintiffs have already incurred substantial losses and will suffer additional losses if defendants continue to deny their obligations under the subject policy. A judicial declaration of plaintiffs' rights under defendants' subject policy at this time will obviate seriatim litigation and a multiplicity of actions that would otherwise result from the actual and justiciable controversy between plaintiffs and defendants concerning their respective rights and obligations under the subject policy.

XI.

REQUESTED RELIEF

WHEREFORE, plaintiffs request judgment against defendants as follows:

On the First Cause of Action

For actual, incidental, consequential, and punitive damages according to proof and for attorney fees, interest, and costs of suit incurred herein;

On the Second Cause of Action

For actual, incidental, and consequential damages according to proof and for interest and costs of suit incurred herein;

///



West Corzine

### On the Third Cause of Action

For the declaratory, equitable, injunctive, equitable monetary and / or other relief requested, for attorney fees pursuant to, inter alia, the private Attorney General doctrine and / or California Civil Procedure Code § 1021.5 as may be appropriate, and for costs of suit incurred herein; and

### On the Fourth Cause of Action

For actual, incidental, and consequential damages according to proof and for interest and costs of suit incurred herein;

### On the Fifth Cause of Action

For actual, incidental, and consequential damages according to proof and for interest and costs of suit incurred herein;

### On the Sixth Cause of Action

For a declaration by the Court of the respective rights and duties of Travelers and Does 1 to 25, inclusive, and Pestmaster under the subject policy, including a declaration as to the correct interpretation of the subject policy and the applicability of insurance coverage and a declaration that Travelers is obligated to indemnify Pestmaster pursuant to the terms of the subject policy and applicable law and reimburse Pestmaster all attorney and expert fees, investigative costs, and other expenses that arise out of or are related to the facts and circumstances giving rise to this action pursuant to the subject policy and / or because Travelers waived its right to deny coverage and / or is estopped from denying coverage and for interest and costs of suit incurred herein; and

West Corzine

/ / /

/ / /

/ / /

On All Causes of Action

For the costs of suit incurred herein, pre-judgment interest as provided by law, and such other relief as this Court deems just and proper.

Dated: June 5, 2013

WEST CORZINE, LLP

By:

IAN CORZINE, ESQ.
Attorney for Plaintiffs, PESTMASTER SERVICES, INC., a California Corporation, and JEFFREY M. VAN DIEPEN

West Corzine

JURY TRIAL DEMAND

Plaintiffs PESTMASTER SERVICES, INC. and JEFFREY M. VAN DIEPEN hereby demand trial by jury of any and all issues so triable.

Dated: June 5th, 2013

WEST CORZINE, LLP

By: ______________________
IAN CORZINE, ESQ.
Attorney for Plaintiffs, PESTMASTER SERVICES, INC., a California Corporation, and JEFFREY M. VAN DIEPEN

West Corzine

# Exhibit A

(TO COMPLAINT OF PLAINTIFFS PESTMASTER SERVICES, INC. AND JEFFREY M. VAN DIEPEN)

TRAVELERS

Wrap+®

DECLARATIONS

POLICY NO. 105726762

# Travelers Casualty and Surety Company of America

Hartford, Connecticut

(A Stock Insurance Company, herein called the Company)

THE LIABILITY COVERAGES ARE WRITTEN ON A CLAIMS-MADE BASIS. THE LIABILITY COVERAGES COVER ONLY CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS WILL BE REDUCED BY DEFENSE EXPENSES, AND DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION. THE COMPANY HAS NO DUTY TO DEFEND ANY CLAIM UNLESS DUTY-TO-DEFEND COVERAGE HAS BEEN SPECIFICALLY PROVIDED HEREIN.

| | |
|---|---|
| ITEM 1 | NAMED INSURED/INSURANCE REPRESENTATIVE:<br><br>Pestmaster Services, Inc.<br><br>D/B/A:<br><br>Principal Address:<br>137 E South Street<br>BISHOP, CA 93514 |
| ITEM 2 | POLICY PERIOD:<br><br>Inception Date: December 23, 2011 Expiration Date: December 23, 2012<br>12:01 A.M. standard time both dates at the Principal Address stated in ITEM 1. |
| ITEM 3 | ALL NOTICES OF CLAIM OR LOSS MUST BE SENT TO THE COMPANY BY EMAIL, FACSIMILE, OR MAIL AS SET FORTH BELOW:<br><br>Email:bfpclaims@travelers.com<br>FAX:(888) 460-6622<br><br>Mail:Travelers Bond & Financial Products Claim<br>385 Washington St. – Mail Code 9275-NB03F<br>St Paul, MN 55102 |
| ITEM 4 | COVERAGE INCLUDED AS OF THE INCEPTION DATE IN ITEM 2:<br><br>Liability Coverages<br><br>☒ Private Company Directors and Officers Liability<br><br>☒ Employment Practices Liability<br><br>☒ Fiduciary Liability<br><br>☐ Miscellaneous Professional Liability |


©2009 The Travelers Companies, Inc. All Rights Reserved

Crime Coverages

☒ Crime

☒ Kidnap and Ransom

Other Coverages

☒ Identity Fraud Expense Reimbursement

ITEM 5 Only those coverage features marked "☒ Applicable" are included in this policy.

PRIVATE COMPANY DIRECTORS AND OFFICERS LIABILITY

| | | |
|---|---|---|
| Limit of Liability: | $1,000,000 | for all Claims |
| Supplemental Personal Indemnification Coverage: | ☒ Applicable | ☐ Not Applicable |
| Supplemental Personal Indemnification Limit of Liability: | $250,000 | for all Claims |
| Additional Defense Coverage: | ☐ Applicable | ☒ Not Applicable |
| Additional Defense Limit of Liability: | Not Covered | for all Claims |
| Investigation Expense Limit of Liability: | $100,000 | for all Claims |
| Retention: | | |
| | $0 | for each Claim under Insuring Agreement A. |
| | $25,000 | for each Claim under Insuring Agreement B. |
| | $25,000 | for each Claim under Insuring Agreement C. |
| Prior and Pending Proceeding Date: | December 23, 2008 | |
| Continuity Date: | December 23, 2008 | |

EMPLOYMENT PRACTICES LIABILITY

| | | |
|---|---|---|
| Limit of Liability: | $3,000,000 | for all Claims |
| Third Party Claim Coverage: | ☒ Applicable | ☐ Not Applicable |
| Additional Defense Coverage: | ☐ Applicable | ☒ Not Applicable |
| Additional Defense Limit of Liability: | Not Covered | for all Claims |
| Retention: | $25,000 | for each Claim under Insuring Agreement A. |
| | $25,000 | for each Claim under Insuring Agreement B., if applicable |


©2009 The Travelers Companies, Inc. All Rights Reserved

| | | |
|---|---|---|
| Prior and Pending Proceeding Date: | Claims for Wrongful Employment Practices: | December 23, 2008 |
| | Claims for Third Party Wrongful Acts: | December 23, 2008 |
| Continuity Date: | Claims for Wrongful Employment Practices: | December 23, 2008 |
| | Claims for Third Party Wrongful Acts: | December 23, 2008 |

FIDUCIARY LIABILITY

| | | |
|---|---|---|
| Limit of Liability: | $3,000,000 | for all Claims |
| Settlement Program Limit of Liability: | $100,000 | for each Settlement Program Notice, which amount is included within, and not in addition to, any applicable limit of liability |
| HIPAA Limit of Liability | $100,000 | which amount is included within, and not in addition to, any applicable limit of liability |
| Additional Defense Coverage: | ☐ Applicable | ☒ Not Applicable |
| Additional Defense Limit of Liability: | Not Covered | for all Claims |
| Retention: | $0 | for each Claim under Insuring Agreement A. |
| | $0 | for each Settlement Program Notice under Insuring Agreement B |
| Prior and Pending Proceeding Date: | December 23, 2008 | |
| Continuity Date: | December 23, 2008 | |

MISCELLANEOUS PROFESSIONAL LIABILITY

| | | |
|---|---|---|
| Limit of Liability: | Not Covered | for each Claim; not to exceed |
| | Not Covered | for all Claims |
| Additional Defense Coverage: | ☐ Applicable | ☐ Not Applicable |
| Additional Defense Limit of Liability: | Not Covered | for all Claims |
| Retention: | | for each Claim |
| Prior and Pending Proceeding Date: | | |
| Retroactive Date: | | |
| Continuity Date: | | |


©2009 The Travelers Companies, Inc. All Rights Reserved

Professional Services:

CRIME

| Insuring Agreement | Single Loss Limit of Insurance | Single Loss Retention |
|---|---|---|
| A. Fidelity | | |
| 1. Employee Theft | $1,000,000 | $10,000 |
| 2. ERISA Fidelity | $1,000,000 | $0 |
| 3. Employee Theft of Client Property | $1,000,000 | $100,000 |
| B. Forgery or Alteration | $1,000,000 | $10,000 |
| C. On Premises | $1,000,000 | $10,000 |
| D. In Transit | $1,000,000 | $10,000 |
| E. Money Orders and Counterfeit Money | $1,000,000 | $10,000 |
| F. Computer Crime | | |
| 1. Computer Fraud | $1,000,000 | $10,000 |
| 2. Computer Program and Electronic Data Restoration Expense | $100,000 | $10,000 |
| G. Funds Transfer Fraud | $1,000,000 | $10,000 |
| H. Personal Accounts Protection | | |
| 1. Personal Accounts Forgery or Alteration | $1,000,000 | $10,000 |
| 2. Identity Fraud Expense Reimbursement | Not Covered | |
| I. Claim Expense | $10,000 | $0 |

If "*Not Covered*" is inserted above opposite any specified Insuring Agreement, or if no amount is included in the Limit of Insurance, such Insuring Agreement and any other reference thereto is deemed to be deleted from this **Crime Policy**.

Policy Aggregate Limit of Insurance: ☐ Applicable ☒ Not Applicable

If a Policy Aggregate Limit of Insurance is applicable, then the Policy Aggregate Limit of Insurance for each Policy Period for Insuring Agreements A through H, inclusive, is: Not Applicable

If a Policy Aggregate Limit of Insurance is not included, then this Crime Policy is not subject to a Policy Aggregate Limit of Insurance as set forth in Section V. CONDITIONS B. PROVISIONS AFFECTING LOSS ADJUSTMENT AND SETTLEMENT 1. Limit of Insurance a. Policy Aggregate Limit of Insurance.

Cancellation of Prior Insurance:

By acceptance of this **Crime Policy**, the **Insured** gives the Company notice canceling prior policies or bonds issued by the Company that are designated by policy or bond numbers 105217626, such cancellation to be effective at the time this **Crime Policy** becomes effective.


©2009 The Travelers Companies, Inc. All Rights Reserved

INSURED'S PREMISES COVERED:

All Premises of the Insured in the United States of America, its territories and possessions, Canada, or any other country throughout the world, except:

Not Applicable

| KIDNAP AND RANSOM | | |
|---|---|---|
| | Limit of Insurance | Retention |
| Insuring Agreement A. Kidnap for Ransom | $1,000,000 for each Insured Event | $0 for each Insured Event |
| Insuring Agreement B. Extortion for Ransom | $1,000,000 for each Insured Event | $0 for each Insured Event |
| Insuring Agreement C. Detention and Hijack | $1,000,000 for each Insured Event | $0 for each Insured Event |
| Insuring Agreement D. In Transit/Delivery | $1,000,000 for each Insured Event | $0 for each Insured Event |
| Insuring Agreement E. Rest and Rehabilitation Expenses | $50,000 per Insured Person | $0 for each Insured Event |
| Insuring Agreement F. Personal Accident | $250,000 per Insured Person, subject to the BENEFIT SCHEDULE found in Section III. DEFINITIONS Y., not to exceed $1,000,000 in the aggregate for the Policy Period | $0 for each Insured Event |
| Insuring Agreement G. Additional Expenses | $1,000,000 for each Insured Event | $0 for each Insured Event |
| Insuring Agreement H. Legal Liability | $1,000,000 for each Insured Event | $0 for each Insured Event |
| Crisis Response Firm Fees and Expenses | Unlimited for each Insured Event | |

If "*Not Covered*" is inserted above opposite any specified Insuring Agreement, or if no amount is included in the Limit of Insurance, such Insuring Agreement and any other reference thereto is deemed to be deleted from this Kidnap and Ransom Policy.

Policy Aggregate Limit of Insurance: ☐ Applicable ☒ Not Applicable

If a Policy Aggregate Limit of Insurance is applicable, then the Policy Aggregate Limit of Insurance for each Policy Period is: Not Applicable

If a Policy Aggregate Limit of Insurance is not included, then this Kidnap and Ransom Policy is not subject to a Policy Aggregate Limit of Insurance as set forth in Section V. CONDITIONS C. LIMIT OF INSURANCE 1. Policy Aggregate Limit of Insurance.


©2009 The Travelers Companies, Inc. All Rights Reserved

| | |
|---|---|
| Crisis Response Firm:<br>ASI Global<br>2925 Briarpark Drive<br>Suite 1100<br>Houston, TX 77042<br>UK Telephone: +44 (0)207 240 3237<br>USA Telephone: +1 713-918-6401<br>ASI Email: responders@asiglobalresponse.com<br>ASI Website:<br>www.asiglobalresponse.com | Travelers Bond and Financial Products Claim Contact Numbers:<br>US Tel: +1 800 842-8496 (available 24/7/365)<br><br>See ITEM 3 of the Declarations for the Travelers Claim mailing address |

Cancellation of Prior Insurance:
By acceptance of this Kidnap and Ransom Policy, the Named Insured gives the Company notice canceling prior policies or bonds issued by the Company that are designated by policy or bond numbers 105217626, such cancellation to be affective at the time this Kidnap and Ransom Policy becomes effective.

**IDENTITY FRAUD EXPENSE REIMBURSEMENT**

| | | |
|---|---|---|
| Limit of Insurance: | $10,000 | per Insured Person for each Identity Fraud |
| Retention: | $0 | per Insured Person for each Identity Fraud |

| | |
|---|---|
| ITEM 6 | PREMIUM FOR THE POLICY PERIOD:<br>$15,453.00 Policy Premium |
| ITEM 7 | TYPE OF LIABILITY COVERAGE:<br>☐ Reimbursement<br>☒ Duty-to-Defend<br>Only the type of liability coverage marked "☒" is included in this policy. |
| ITEM 8 | LIABILITY COVERAGE EXTENDED REPORTING PERIOD:<br>Additional Premium Percentage: 75 %<br>Additional Months: 12<br>(If exercised in accordance with section III. CONDITIONS, O. EXTENDED REPORTING PERIOD of the Liability Coverage Terms and Conditions) |
| ITEM 9 | LIABILITY COVERAGE RUN-OFF EXTENDED REPORTING PERIOD:<br>Additional Premium Percentage: Not Applicable<br>Additional Months: Not Applicable<br>(If exercised in accordance with section III. CONDITIONS. K. CHANGE OF CONTROL of the Liability Coverage Terms and Conditions) |
| ITEM 10 | ANNUAL REINSTATEMENT OF THE LIABILITY COVERAGE LIMIT OF LIABILITY:<br>☐ Applicable |


©2009 The Travelers Companies, Inc. All Rights Reserved

| | |
|---|---|
| | ☒ Not Applicable<br>Only those coverage features marked "☒ Applicable" are included in this policy. |
| ITEM 11 | FORMS AND ENDORSEMENTS ATTACHED AT ISSUANCE:<br><br>LIA-3001-0109; LIA-5004-1107; LIA-7092-0109; LIA-7097-0109; LIA-7189-0109; LIA-7330-0109; LIA-7335-0109; LIA-7343-0109; ACF-7004-0110; CRI-3001-0109; EPL-3001-0109; FRI-3001-0109; IDF-3001-0109; KER-3001-0109; KER-3001-ECI-0109; PDO-3001-0109; CRI-5005-0109; ACF-4031-0211; CRI-7021-0109; EPL-7059-0109; EPL-7062-0109; KER-7026-0109; PDO-7061-0109; PDO-7067-0109; PDO-7115-0109; IDF-7019-0110; PDO-10002-0610; PDO-10003-0610; LIA-10001-0610; LIA-10002-0610; LIA-10003-0610; EPL-10008-0111; ACF-7006-0511 |
| ITEM 12 | LIABILITY COVERAGE SHARED LIMIT OF LIABILITY:<br><br>$3,000,000 for all Claims under the following Liability Coverages<br><br>Employment Practices Liability, Fiduciary Liability, Private Company Directors and Officers Liability |
| ITEM 13 | Wrap+® AGGREGATE LIMIT OF LIABILITY:<br><br>Not Applicable<br><br>☐ Applicable ☒ Not Applicable<br><br>If marked "☒ Applicable" above, the Company's maximum limit of liability in a single Policy Period for all Claims under each purchased Liability Coverage and all loss under each purchased Crime Coverage, as set forth in ITEM 4 of these Declarations, shall not exceed the AGGREGATE LIMIT OF LIABILITY set forth above. |

THE DECLARATIONS, THE APPLICATION, THE LIABILITY COVERAGE TERMS AND CONDITIONS, EACH PURCHASED LIABILITY COVERAGE, EACH PURCHASED CRIME COVERAGE, AND EACH PURCHASED OTHER COVERAGE, AS SET FORTH IN ITEM 4 OF THE DECLARATIONS, AND ANY ENDORSEMENTS ATTACHED THERETO, CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE COMPANY, THE ENTITY NAMED IN ITEM 1 OF THE DECLARATIONS, AND ANY INSURED.

______________________________
Countersigned By

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its authorized officers.

Thomas M. Kunkel
Executive Vice President

Wendy C. Skjerven
Corporate Secretary


©2009 The Travelers Companies, Inc. All Rights Reserved

TRAVELERS Wrap+®

CRIME

*CRIME TERMS AND CONDITIONS*

*PLEASE READ ALL TERMS AND CONDITIONS CAREFULLY*

CONSIDERATION CLAUSE

IN CONSIDERATION of the payment of the premium stated in the Declarations, and subject to the Declarations and pursuant to all the terms, conditions, exclusions and limitations of this **Crime Policy**, the Company will pay the **Insured** for direct loss that the **Insured** sustains which is directly caused by a **Single Loss** taking place at any time and which is **Discovered** by the **Insured** during the **Policy Period** or during the Extended Period to Discover Loss pursuant to the terms set forth in Section V. CONDITIONS A. GENERAL CONDITIONS 3. Extended Period to Discover Loss.

## *I. INSURING AGREEMENTS*

This **Crime Policy** provides coverage under each of the following Insuring Agreements. Notwithstanding the aforesaid, if ITEM 5 of the Declarations indicates that any Insuring Agreement is "*Not Covered,*" then such Insuring Agreement and any other reference thereto is deemed to be deleted from this **Crime Policy**.

A. FIDELITY

1. Employee Theft

The Company will pay the **Insured** for the **Insured's** direct loss of, or direct loss from damage to, **Money**, **Securities** and **Other Property** directly caused by **Theft** or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

2. ERISA Fidelity

The Company will pay the **Insured** for direct loss of, or direct loss from damage to, **Money**, **Securities** and **Other Property** that belongs to an **Employee Benefit Plan**, directly caused by **Theft** or **Forgery** committed by a **Fiduciary**, whether identified or not, acting alone or in collusion with other persons.

3. Employee Theft of Client Property

The Company will pay the **Insured** for direct loss of, or direct loss from damage to, **Money**, **Securities** and **Other Property** sustained by the **Insured's Client**, directly caused by **Theft** or **Forgery** committed by an identified **Employee**.

B. FORGERY OR ALTERATION

The Company will:

1. pay the **Insured** for the **Insured's** direct loss directly caused by **Forgery** or alteration of, on or in any written **Covered Instruments** that are:


©2009 The Travelers Companies, Inc. All Rights Reserved

a. made by, drawn by, or drawn upon, the Insured, or purport to have been so made or drawn; or

b. made or drawn by one acting as the Insured's agent, or purport to have been so made or drawn; and

2. reimburse the Insured for reasonable legal defense expenses that the Insured has paid if the Insured is sued for refusing to pay any written Covered Instrument under this Insuring Agreement B. on the basis that it has been Forged or altered. Reimbursement of such legal expenses is conditioned upon the Insured's receipt of the Company's prior written consent to defend against such suit. The amount of any legal expenses reimbursed under Insuring Agreement B. is in addition to the applicable Single Loss Limit of Insurance for Insuring Agreement B.

A signature that is a mechanical or electronic reproduction of a handwritten signature produced by a mechanical check-writing machine or a computer printer is treated the same as a handwritten signature. An Electronic Signature is not treated the same as a mechanical or electronic reproduction of a handwritten signature and is not a Forgery under this Insuring Agreement B.

For purposes of this Insuring Agreement B., the term "check" includes a "substitute check" as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

C. ON PREMISES

The Company will pay the Insured for:

1. the Insured's direct loss of Money or Securities located inside the Premises or Financial Institution Premises directly caused by Theft, committed by a person present inside such Premises or Financial Institution Premises;

2. the Insured's direct loss of Money or Securities located inside the Premises or Financial Institution Premises directly caused by disappearance, damage or destruction;

3. the Insured's direct loss of, or direct loss from damage to, Other Property located inside the Premises:

a. directly caused by an actual or attempted Robbery; or

b. in a safe or vault, directly caused by an actual or attempted Safe Burglary; and

4. the Insured's direct loss from damage to the Premises or its exterior resulting directly from an actual or attempted Theft, Robbery or Safe Burglary, if the Insured is the owner of the Premises or is liable for damage to it; or

5. the Insured's direct loss of, or loss from damage to, a locked safe, vault, cash register, cash box or cash drawer located inside the Premises resulting directly from an actual or attempted Theft, Robbery or Safe Burglary, if the Insured is the owner of the locked safe, vault, cash register, cash box or cash drawer or is liable for damage thereto.

D. IN TRANSIT

1. The Company will pay the Insured for the Insured's direct loss of Money or Securities directly caused by Theft, disappearance, damage or destruction while in transit outside the Premises and in the care and custody of:


©2009 The Travelers Companies, Inc. All Rights Reserved

a. a Messenger, including while temporarily within the living quarters of a Messenger; or
b. an armored motor vehicle company.

2. The Company will pay the Insured for the Insured's direct loss of, or the Insured's direct loss from damage to, the Insured's Other Property directly caused by an actual or attempted Robbery while in transit outside the Premises and in the care and custody of:

a. a Messenger; or
b. an armored motor vehicle company.

3. The Company will pay the Insured for the Insured's direct loss of, or direct loss from damage to, the Insured's Other Property directly caused by an actual or attempted Theft of the Insured's Other Property while it is temporarily within the living quarters of a Messenger.

Coverage under this Insuring Agreement D. begins immediately upon receipt of the Money, Securities or Other Property by the transporting party and ends immediately upon delivery to the designated recipient or its agent.

E. MONEY ORDERS AND COUNTERFEIT MONEY

The Company will pay the Insured for the Insured's direct loss directly caused by the Insured's good faith acceptance of:

1. original money orders, issued or purportedly issued by any post office, express company or bank located in the United States of America, its territories and possessions, Canada, or any other country in which the Insured maintains a physical Premises, that are not paid upon presentation; or

2. Counterfeit Money, of the United States of America, its territories and possessions, Canada, or any other country in which the Insured maintains a physical Premises that is acquired during the regular course of business;

in exchange for merchandise, Money or services.

F. COMPUTER CRIME

1. Computer Fraud

The Company will pay the Insured for the Insured's direct loss of, or direct loss from damage to, Money, Securities and Other Property directly caused by Computer Fraud.

2. Computer Program and Electronic Data Restoration Expense

The Company will pay the Insured for reasonable Restoration Expense that the Insured incurs to restore or replace damaged or destroyed Computer Programs or Electronic Data stored within the Insured's Computer System directly caused by a Computer Violation.

For purposes of this Insuring Agreement F.2., a Single Loss involving Computer Program and Electronic Data Restoration Expense applies to reasonable Restoration Expense incurred by the Insured between the time the Insured Discovers the damage or destruction and the time the


©2009 The Travelers Companies, Inc. All Rights Reserved

Insured's Computer Program or Electronic Data is restored to the level of operational capability that existed immediately preceding a Computer Violation. Recurrence of the same Computer Virus after the Insured's Computer Program or Electronic Data has been restored constitutes a separate Single Loss.

Payment of reasonable Restoration Expense applies:

a. only to Computer Programs and Electronic Data which the Insured owns or leases, or for which the Insured is legally liable; and

b. only if the Insured is unable to reproduce such Computer Programs or Electronic Data from back-up data copies.

Payment of reasonable Restoration Expense will be made to the Insured upon the completion of the restoration of the damaged or destroyed Computer Programs or Electronic Data.

If a Single Loss is covered under both Insuring Agreements F.1. and F.2., then only the Retention for a Single Loss under Insuring Agreement F.1. will be applicable and the payment of Restoration Expense under Insuring Agreement F.2. will be part of, and not in addition to, the Single Loss Limit of Insurance for Insuring Agreement F.1.

G. FUNDS TRANSFER FRAUD

The Company will pay the Insured for the Insured's direct loss of Money and Securities contained in the Insured's Transfer Account directly caused by Funds Transfer Fraud.

H. PERSONAL ACCOUNTS PROTECTION

1. Personal Accounts Forgery or Alteration

The Company will pay the Insured, on behalf of the Insured's Management Staff Member, for loss incurred by the Insured's Management Staff Member, directly caused by Forgery or alteration of, on or in any written Covered Personal Instruments that are:

a. drawn upon personal accounts of the Insured's Management Staff Member, or purported to have been so drawn; or

b. made or drawn by one acting as an agent of the Insured's Management Staff Member, or purport to have been so made or drawn.

A signature that is a mechanical or electronic reproduction of a handwritten signature produced by a mechanical check-writing machine or a computer printer will be treated the same as a handwritten signature. An Electronic Signature is not treated the same as a mechanical or electronic reproduction of a handwritten signature and is not a Forgery under this Insuring Agreement H.

For purposes of this Insuring Agreement H.1. the term "check" includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

2. Identity Fraud Expense Reimbursement

The Company will reimburse the Insured, on behalf of the Insured's Management Staff Member, for Identity Fraud Expense incurred by the Insured's Management Staff Member as a direct result of any Identity Fraud.


©2009 The Travelers Companies, Inc. All Rights Reserved

I. CLAIM EXPENSE

The Company will pay the Insured for reasonable Claim Expenses incurred and paid by the Insured to establish the existence, amount and preparation of the Insured's proof of loss in support of a covered claim for loss under any Insuring Agreement of this Crime Policy.

The following conditions specifically apply to this Insuring Agreement I.:

1. any Claim Expenses payable to the Insured are only applicable to any covered loss which exceeds the Single Loss Retention for the Insuring Agreement that is the subject of a claim under this Crime Policy;

2. Claim Expenses that are payable to the Insured are in addition to the Single Loss Limit of Insurance for the Insuring Agreement that is the subject of a claim under this Crime Policy; and

3. Claim Expenses payable to the Insured will be paid to the Insured at the same time as the payment of the valid and collectible loss under the Insuring Agreement that is the subject of a claim under this Crime Policy.

## II. GENERAL AGREEMENTS

A. JOINT INSURED

1. If the Insured consists of more than one entity, then the First Named Insured acts for itself and for every other Insured for all purposes of this Crime Policy.

2. If any Insured, or a partner or Management Staff Member of that Insured, has knowledge of any information relevant to this Crime Policy, that knowledge is considered knowledge of every Insured.

3. An Employee of any Insured is considered to be an Employee of every Insured.

4. The Company will not pay the Insured more for loss or losses sustained by more than one Insured than the amount the Company would pay if all loss or losses had been sustained by one Insured.

5. Payment by the Company to the First Named Insured for loss sustained by any Insured, or payment by the Company to the Employee Benefit Plan for loss sustained under Insuring Agreement A.2, fully releases the Company on account of such loss.

6. If this Crime Policy or any of its Insuring Agreements are canceled or terminated as to any Insured, loss sustained by that Insured is covered only if Discovered by the Insured during the period of time provided in the Extended Period To Discover Loss pursuant to the terms set forth in Section V. CONDITIONS A. GENERAL CONDITIONS 3. Extended Period to Discover Loss; provided, this extended period to discover loss terminates as to that Insured immediately upon the effective date of any other insurance obtained by that Insured replacing in whole or in part the insurance afforded by this Crime Policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

B. ADDITIONAL OFFICES

If the Insured establishes any additional offices, other than by consolidation with, merger with, purchase of, or acquisition of assets or liabilities of another organization while this Crime Policy is in effect, such offices are automatically covered by this Crime Policy from the date of such establishment without the requirement of notice to the Company or the payment of additional premium for the remainder of the Policy Period.


©2009 The Travelers Companies, Inc. All Rights Reserved

C. CONSOLIDATION, MERGER OR PURCHASE OF ASSETS

If, during the **Policy Period**, the **Insured** merges with, purchases or acquires the assets or liabilities of another entity, this **Crime Policy** will provide coverage for that merged, purchased, or acquired entity, subject to all other terms and conditions herein, but only for loss **Discovered** by the **Insured** after the effective date of such merger, purchase, or acquisition; provided, the **Insured** gives the Company written notice of such merger, purchase, or acquisition, and specific application has been submitted on the Company's form in use at the time, together with such documentation and information as the Company may require, all within 90 days after the effective date of such merger, purchase, or acquisition. Coverage for the merged, purchased, or acquired entity will not be afforded following such 90-day period unless the Company has agreed to provide such coverage, subject to any additional terms and conditions as the Company may require, and the **Insured** has paid the Company any additional premium as may be required by the Company. Any **Employee Benefit Plan** or **Sponsored Plan** acquired as above will be included as **Insureds** as specified in Item 1 of the Declarations.

The 90-day notice requirement and the 90-day limitation of coverage will not apply, provided: (1) the assets of the merged, purchased, or acquired entity do not exceed 30% of the total assets of all **Insureds** as reflected in the **Insured's** most recent fiscal year-end financial statement, or (2) the merger, purchase, or acquisition occurs less than 90 days prior to the end of the **Policy Period**.

D. ACQUISITIONS

If, during the **Policy Period**, the **Insured** acquires a **Subsidiary**, this **Crime Policy** will provide coverage for such **Subsidiary** and its respective **Management Staff Members**, **Employee Benefit Plans**, and **Sponsored Plans**, subject to all other terms and conditions of this **Crime Policy**, provided written notice of such acquisition has been given to the Company, and specific application has been submitted on the Company's form in use at the time, together with such documentation and information as the Company may require, all within 90 days after the effective date of such acquisition. Coverage for such **Subsidiary** will not be afforded following such 90-day period unless the Company has agreed to provide such coverage, subject to any additional terms and conditions as the Company may require, and the **Insured** has paid the Company any additional premium as may be required by the Company.

The 90-day notice requirement and the 90-day limitation of coverage will not apply provided that: (1) the assets of the acquired **Subsidiary** do not exceed 30% of the **Insured's** total assets as reflected in the **Insured's** most recent fiscal year-end financial statement; or (2) the acquisition occurs less than 90 days prior to the end of the **Policy Period**.

E. CHANGE OF CONTROL – NOTICE REQUIREMENTS

When the **Insured** learns that a **Change of Control** has taken place as to any **Insured**, or will take place during the **Policy Period**, the **Insured** must give the Company written notice within 90 days of the effective date of such **Change of Control**.

## *III. DEFINITIONS*

Wherever appearing in this **Crime Policy**, the following words and phrases appearing in bold type have the meanings set forth in this Section III. DEFINITIONS:

A. ***Change of Control*** means:

1. the acquisition of any **Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of any **Insured** into or with another entity such that the **Insured** is not the surviving entity; or
2. the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate more than 50% of the board of directors or board of managers or to exercise a majority control of the board of directors, board of managers, or a functional equivalent thereof of any **Insured**.


©2009 The Travelers Companies, Inc. All Rights Reserved

B. *Claim Expenses* means reasonable fees, costs and expenses of outside accountants, attorneys, consultants or experts retained by the Insured to determine the amount and extent of loss covered under this Crime Policy. The reasonableness of such expenses will be determined by the Company. The phrase does not mean or include any of the Insured's internal corporate fees, costs (direct or indirect), obligations or Employee wages and salaries.

C. *Client* means an entity designated as a Client by endorsement to this Crime Policy for which the Insured performs services as specified in a written agreement, but only while the written agreement is in effect.

D. *Client's Premises* means the interior of that portion of any building the Insured's Client occupies in conducting its business.

E. *Computer Fraud* means:

The use of any computer to fraudulently cause a transfer of Money, Securities or Other Property from inside the Premises or Financial Institution Premises:

1. to a person (other than a Messenger) outside the Premises or Financial Institution Premises; or
2. to a place outside the Premises or Financial Institution Premises.

F. *Computer Program* means a set of related electronic instructions that direct the operations and functions of a Computer System or devices connected to it that enable the Computer System or devices to receive, process, store, retrieve, send, create or otherwise act upon Electronic Data.

G. *Computer System* means a computer and all input, output, processing, storage and communication facilities and equipment that are connected to such a device and that the operating system or application software used by the Insured are under the direct operational control of the Insured. Off-line media libraries are deemed to be part of such Computer System.

H. *Computer Violation* means:

1. a Computer Virus designed to damage or destroy a Computer Program or Electronic Data; or
2. vandalism by a natural person, including an Employee, who has gained unauthorized electronic access to the Insured's Computer System.

I. *Computer Virus* means a set of unauthorized instructions, programmatic or otherwise:

1. directed solely against the Insured; and
2. that propagate themselves through the Computer System or networks;

provided such instructions were maliciously introduced by a natural person.

J. *Counterfeit* means an imitation of Money that is intended to deceive and to be taken as genuine.

K. *Covered Instruments* means:

1. checks, drafts, promissory notes, bills of exchange or similar written promises, orders or directions to pay a sum certain in Money; and
2. written instruments required in conjunction with any transaction involving any Credit. Debit or Charge Card issued to the Insured, the Insured's Employees or the Insured's Management Staff Members for business purposes.

L. *Covered Personal Instruments* means:

1. checks, drafts, promissory notes or similar written promises, orders or directions to pay a sum certain in Money; and


©2009 The Travelers Companies, Inc. All Rights Reserved

2. Written instruments required in conjunction with any transaction involving any Credit, Debit or Charge Card issued to a Management Staff Member for personal use.

M. *Credit, Debit or Charge Card* means any card, plate or other similar device used for the purpose of obtaining Money, property, labor or services on credit or for immediate payment. The terms do not mean a note, check, draft, money order or other negotiable instrument.

N. *Crime Policy* means, collectively, the Declarations, the application, the Crime Terms and Conditions, and any endorsements attached thereto.

O. *Digital Signature* means an electronic identifier created by computer, within, attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.

P. *Discover, Discovered,* or *Discovery* means the moment when the Insured, any partner in the Insured, or Management Staff Member:

1. first become(s) aware of facts that would cause a reasonable person to assume that a loss of a type covered by this Crime Policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact details of loss may not then be known; or
2. first receive(s) notice of a claim against the Insured alleging facts which, if true, would constitute a loss under this Crime Policy,

whichever occurs first.

Q. *Electronic Data* means facts or information converted to a form:

1. usable in a Computer System;
2. that does not provide instructions or directions to a Computer System; or
3. that is stored on electronic processing media for use by a Computer Program.

R. *Electronic Signature* means a Digital Signature, an electronic sound, symbol or process, within, attached to, or logically associated with a record and executed or adopted by a person with the intent to sign the record.

S. *Employee* means:

1. any natural person:

   a. while in the Insured's service or for 60 days after termination of service, unless such termination is due to Theft or Forgery or any other dishonest act committed by the Employee;
   b. who the Insured compensates directly by salary, wages or commissions; and
   c. who the Insured has the right to direct and control while performing services for the Insured;

2. any natural person who is temporarily furnished to the Insured:

   a. to substitute for an Employee as set forth in paragraph 1. above, who is on medical, military or other leave of absence; or
   b. to meet seasonal or short-term workload conditions;

   while that person is subject to the Insured's direction and control and performing services for the Insured; provided, any such natural person who has care and custody of property outside the Premises is specifically excluded from this definition;


©2009 The Travelers Companies, Inc. All Rights Reserved

3. any natural person, other than a temporary **Employee** described in paragraph 2. above, who is leased to the **Insured** under a written agreement between the **Insured** and a labor leasing firm, while that person is subject to the **Insured's** direction and control and performing services for the **Insured**;

4. any natural person:

   a. who is a member of the board of directors, member of the board of trustees or **LLC Manager** while acting as a member of any of the **Insured's** elected or appointed committees, including any member of such committee, to perform on the **Insured's** behalf, specific, as distinguished from general, directorial acts;

   b. who is a non-compensated officer;

   c. other than a non-compensated fund solicitor, while performing services for the **Insured** that are usual to the duties of an **Employee** or officer;

   d. while acting as a non-compensated fund solicitor during fund raising campaigns;

   e. who is a former **Employee**, member of the board of directors, partner, **LLC Manager**, or member of the board of trustees retained as a consultant while that person is subject to the **Insured's** direction and control and performing services for the **Insured**;

   f. who is a guest student or intern pursuing studies or duties in any of the **Insured's** offices or **Premises**; while such person is subject to the **Insured's** direction and control and performing services for the **Insured**;

   g. who is a volunteer, while such person is subject to the **Insured's** direction and control and is performing services for the **Insured**, or

5. any attorney retained by the **Insured**, and any employee of such attorney, while performing legal services for the **Insured**.

***Employee*** also means any individual described in paragraphs 1-5 above while such person is on medical, military, or other leave of absence from the **Insured**. Coverage applies to any such **Employee** while on leave, regardless of whether such person remains subject to the **Insured's** direction and control during the time of leave.

***Employee*** does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative or other person of the same general character not specified in paragraphs 1. through 5. above.

T. ***Employee Benefit Plan*** means an employee welfare benefit plan or an employee pension benefit plan as more fully set forth in Title 1, Section 3 of the Employee Retirement Income Security Act of 1974 and any amendments thereto (ERISA) and which is solely sponsored by an **Employee Benefit Plan Sponsor**.

U. **Employee Benefit Plan Sponsor** means:

1. the **First Named Insured**,

2. any **Subsidiary**, or

3. any other entity listed in Item 1. of the Declarations.


©2009 The Travelers Companies, Inc. All Rights Reserved

V. *Fiduciary* means any natural person who is a trustee, an officer, an Employee or an administrator of any Employee Benefit Plan; and any person, or a member of the board of directors, an officer, an Officer-Shareholder, a member of the board of trustees, an LLC Manager, or an Employee while that person is handling Money, Securities and Other Property that belongs to any Employee Benefit Plan.

Fiduciary does not mean any agent, broker, independent contractor, broker/dealer, registered representative, investment advisor, custodian or other person or entity of the same general character.

W. *Financial Institution* means:

1. a bank, trust company, savings bank, credit union, savings and loan association or similar thrift institution; or
2. a stock brokerage firm, mutual fund, liquid assets fund or similar investment institution.

X. *Financial Institution Premises* means the interior of that portion of any building occupied by a Financial Institution (including any night depository chute and any safe maintained by such Financial Institution), transfer agent or registrar or similarly recognized place of safe deposit.

Y. *First Named Insured* means the entity first named in ITEM 1 of the Declarations.

Z. *Forgery*, or *Forged* means the signing of the name of another person or organization with a handwritten signature physically affixed directly to a Covered Instrument or Covered Personal Instrument, without authority and with the intent to deceive; it does not mean a signature that consists in whole or in part of one's own name signed with or without authority in any capacity, for any purpose.

AA. *Funds Transfer Fraud* means:

1. an electronic, telegraphic, cable, teletype or telephone instruction fraudulently transmitted to a Financial Institution directing such institution to debit a Transfer Account and to transfer, pay or deliver Money or Securities from the Transfer Account which instruction purports to have been transmitted by the Insured, but was in fact fraudulently transmitted by someone other than the Insured without the Insured's knowledge or consent;
2. a fraudulent written instruction, other than one covered under Insuring Agreement B., issued to a Financial Institution directing such Financial Institution to debit a Transfer Account and to transfer, pay or deliver Money or Securities from such Transfer Account by use of an electronic funds transfer system at specified intervals or under specified conditions, which written instruction purports to have been issued by the Insured but was in fact fraudulently issued, Forged or altered by someone other than the Insured without the Insured's knowledge or consent; or
3. an electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by the Insured, which purports to have been transmitted by an Employee, but which was in fact fraudulently transmitted by someone else without the Insured's or the Employee's consent.

BB. *Identity Fraud* means the act of knowingly transferring or using, without lawful authority, a means of identification of a Management Staff Member with the intent to commit, aid, or abet any unlawful activity that constitutes a violation of federal law or a felony under any applicable jurisdiction.

CC. *Identity Fraud Expense* means:

1. costs for notarizing fraud affidavits or similar documents for credit agencies, financial institutions, merchants or other credit grantors that have required that such affidavits be notarized;
2. costs for certified mail to law enforcement agencies, credit agencies, financial institutions, merchants or other credit grantors;


©2009 The Travelers Companies, Inc. All Rights Reserved

3. costs for long distance telephone calls to law enforcement agencies, credit agencies, financial institutions, merchants or other credit grantors to report or discuss any actual Identity Fraud;

4. lost wages, up to a maximum payment of $1,000. per week for a maximum period of five (5) weeks, as a result of absence from employment:

   a. to communicate with law enforcement agencies, legal counsel, credit agencies, financial institutions, merchants or other credit grantors;
   b. to complete fraud affidavits or similar documents; or
   c. due to wrongful incarceration arising solely from someone having committed a crime in the Management Staff Member's name; provided, that lost wages will not apply in the case of wrongful incarceration absent all charges being dismissed or an acquittal;

5. loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information;

6. reasonable attorney fees incurred, with the Company's prior written consent, for:
   a. defense of lawsuits brought against the Insured's Management Staff Member by financial institutions, merchants, other credit grantors or their collection agencies;
   b. the removal of any criminal or civil judgments wrongly entered against the Insured's Management Staff Member; or
   c. challenging the accuracy or completeness of any information in a consumer credit report; and

7. costs for daycare and eldercare incurred solely as a direct result of any Identity Fraud Discovered during the Policy Period.

*Identity Fraud Expense* does not include any expense or loss not listed in paragraphs 1. through 7. of this Definition CC..

DD. *Insured* means:

1. for the purposes of Insuring Agreement A.2., any and all Employee Benefit Plans;
   a. which have been established or maintained by an Employee Benefit Plan Sponsor as of the inception date of this Crime Policy, or
   b. which have been created or acquired by an Employee Benefit Plan Sponsor after the inception date of this Crime Policy, subject to the provisions of General Agreements C and D.

or

2. for the purposes of all other Insuring Agreements:
   a. the First Named Insured,
   b. any Subsidiary,
   c. any Sponsored Plan, or
   d. any other entity listed in Item 1. of the Declarations.

EE. *LLC Manager* means any natural person who was, is or becomes a manager, member of the board of managers, or a functionally equivalent executive of a limited liability company.

FF. *LLC Member* means any natural person who has an ownership interest in a limited liability company.


©2009 The Travelers Companies, Inc. All Rights Reserved

GG. *Management Staff Member* means the Insured's proprietor, natural person partner, member of the board of directors, member of the board of trustees, officer, risk manager, in-house general counsel, LLC Manager, or LLC Member.

HH. *Messenger* means any Management Staff Member, or relative thereof, any Officer-Shareholder, or any Employee, duly authorized, while having care and custody of covered property outside the Premises.

II. *Money* means a medium of exchange in current use and authorized or adopted by a domestic or foreign government, including currency, coins, bank notes, bullion, travelers' checks, registered checks and money orders held for sale to the public.

JJ. *Officer-Shareholder* means any officer who has a 25% or greater ownership interest in any one or more Insureds.

KK. *Other Property* means any tangible property other than Money and Securities that has intrinsic value.

LL. *Policy Period* means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations. In no event will the Policy Period continue past the effective date of cancellation or termination of this Crime Policy.

MM. *Premises* means the interior of that portion of any building the Insured occupies in conducting the Insured's business.

NN. *Restoration Expense* means reasonable costs incurred by the Insured to reproduce Computer Programs or Electronic Data and enable the Insured to restore the Insured's Computer System to the level of operational capability that existed immediately preceding a Computer Violation.

Restoration Expense does not include:

1. the Insured's internal corporate costs and expenses, including Employee remuneration and any costs related to any legal action;
2. expenses incurred as a result of the reconstruction of Computer Programs and Electronic Data recorded on media, including magnetic or optical media if there are no analyses files, specifications or backups of Computer Programs or Electronic Data held outside the Premises;
3. expenses incurred as a result of the reconstruction of Computer Programs and Electronic Data if the Insured knowingly used illegal copies of programs;
4. expenses incurred to render the Computer Programs and Electronic Data usable by replacement processing equipment;
5. expenses incurred to design, update or improve Computer Programs or Electronic Data or to perfect their operation or performance;
6. expenses incurred as a result of alteration in Computer Programs and Electronic Data held on magnetic media due to the effect of magnetic fields, incorrect usage of the Computer Programs and Electronic Data, or the obsolescence of the Computer System;
7. the Insured's lost revenue, sales or profits; or
8. expenses incurred by any customer.

OO. *Robbery* means the unlawful taking of Money, Securities and Other Property from the care and custody of the Insured, the Insured's partners or any other person (except any person acting as a watchperson or janitor) by one who has:

1. caused or threatened to cause that person bodily harm; or
2. committed an unlawful act witnessed by that person.

PP. *Safe Burglary* means the unlawful taking of:

1. Money, Securities and Other Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or


©2009 The Travelers Companies, Inc. All Rights Reserved

2. a safe or vault from inside the Premises.

QQ. *Securities* means written negotiable and non-negotiable instruments or contracts representing Money or property including:

1. tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and
2. evidences of debt issued in connection with any Credit, Debit or Charge Card, which cards are not issued by the Insured;

but does not include Money.

RR. *Single Loss* means:

1. for purposes of Insuring Agreement A.:

a. an individual act;
b. the combined total of all separate acts; or
c. a series of related acts;

committed by an Employee or committed by more than one Employee acting alone or in collusion with other persons both during and before the Policy Period;

2. for purposes of Insuring Agreements B. and H.1., all loss caused by any person, or loss in which that person is involved, whether the loss involves one or more written Covered Instruments or Covered Personal Instruments; and

3. for purposes of all other Insuring Agreements:

a. any act or series of related acts or events involving one or more persons; or
b. any act, acts or events involving a person or group of persons acting together;

whether identified or not, both during and before the Policy Period.

SS. *Sponsored Plan* means any employee benefit plan or employee pension benefit plan solely sponsored by any Insured that is not subject to the terms of ERISA.

TT. *Subsidiary* means:

1. any corporation, partnership, limited liability company or other entity, organized under the laws of any jurisdiction in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the Insured owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to elect, appoint, or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent; or

2. subject to the provisions set forth in Section II. GENERAL AGREEMENTS D. ACQUISITIONS, of the Crime Terms and Conditions, any entity that the Insured acquires or forms during the Policy Period in which the Insured owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent.

*Subsidiary* does not include any entity in which any Insured is engaged as a participant in any type of joint venture unless such entity is specifically scheduled as an additional Insured by endorsement to this Crime Policy.

UU. *Theft* means:


©2009 The Travelers Companies, Inc. All Rights Reserved

1. under Insuring Agreement A.3., the intentional unlawful taking of Money, Securities and Other Property to the deprivation of a Client;
2. under Insuring Agreements C. or D., the intentional unlawful taking of Money and Securities to the Insured's deprivation.
3. under all other Insuring Agreements, the intentional unlawful taking of Money, Securities and Other Property to the Insured's deprivation.

VV. *Transfer Account* means an account maintained by the Insured at a Financial Institution from which the Insured can initiate the transfer, payment or delivery of Money or Securities:

1. by means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly or through an electronic funds transfer system; or
2. by means of written instructions (other than those described in Insuring Agreements B. and H.1.) establishing the conditions under which such transfers are to be initiated by such Financial Institution through an electronic funds transfer system.

## IV. EXCLUSIONS

A. This Crime Policy will not apply to loss resulting directly or indirectly from war, whether or not declared; civil war; insurrection; rebellion or revolution; military, naval or usurped power; governmental intervention, expropriation or nationalization; or any act or condition related to any of the foregoing.

B. This Crime Policy will not apply to loss resulting directly or indirectly from seizure or destruction of property by order of governmental authority.

C. This Crime Policy will not apply to loss resulting directly or indirectly from any fraudulent, dishonest or criminal act committed by the Insured, the Insured's natural person partners, any LLC Member or Officer-Shareholder, whether acting alone or in collusion with others; provided, this Exclusion C. will not apply to loss covered under Insuring Agreement A.2..

D. This Crime Policy will not apply to loss resulting directly or indirectly from any fraudulent, dishonest or criminal act committed by any Employee or Fiduciary whether acting alone or in collusion with others, unless covered under Insuring Agreements A.1., A.2., A.3., F.2., or H..

E. This Crime Policy will not apply to loss resulting directly or indirectly from any Funds Transfer Fraud, unless covered under Insuring Agreements A.1., A.2., A.3., or G..

F. This Crime Policy will not apply to loss resulting directly or indirectly from the Insured's acceptance of money orders or Counterfeit Money, unless covered under Insuring Agreements A.1., A.2., A.3. or E..

G. This Crime Policy will not apply to loss or damages resulting directly or indirectly from the input of Electronic Data by a natural person having the authority to enter the Insured's Computer System, unless covered under Insuring Agreements A.1., A.2., A.3., F.2. or G..

H. This Crime Policy will not apply to loss resulting directly or indirectly from forged, altered or fraudulent documents or written instruments used as source documentation in the preparation of Electronic Data, unless covered under Insuring Agreements A.1., A.2., or A.3..

I. This Crime Policy will not apply to any expenses incurred by the Insured in establishing the existence or the amount of any loss covered under this Crime Policy, unless covered under Insuring Agreement I..

J. This Crime Policy will not apply to loss of income, whether or not earned or accrued, or potential income, including interest and dividends, not realized by the Insured as the result of any loss covered under this Crime Policy.

K. This Crime Policy will not apply to damages of any type, except the Insured's direct compensatory damages resulting from a loss covered under this Crime Policy.


©2009 The Travelers Companies, Inc. All Rights Reserved

L. This Crime Policy will not apply to indirect or consequential loss of any nature, including fines, penalties, multiple or punitive damages.

M. This Crime Policy will not apply to loss resulting directly or indirectly from any Theft, disappearance, damage, destruction or disclosure of any intangible property or confidential information including:

1. trade secret information, confidential processing methods or other confidential information or intellectual property of any kind, or Electronic Data unless otherwise covered under Insuring Agreement F.2.; or
2. Computer Programs.

N. This Crime Policy will not apply to loss of, or damage to, manuscripts, records, accounts, microfilm, tapes or other records, whether written or electronic, or the cost of reproducing any information contained in such lost or damaged records, except when covered under Insuring Agreements C., D., or F.2..

O. This Crime Policy will not apply to loss, or that part of any loss, the proof of which as to its existence or amount is dependent solely upon:

1. an inventory computation or physical count; or
2. a profit and loss computation;

provided that where the Insured establishes wholly apart from such computations or physical count that the Insured has sustained a loss covered under Insuring Agreements A.1., A.2, A.3. or F.1., then the Insured may offer the Insured's inventory records and an actual physical count of inventory in support of other evidence as to the amount of loss claimed.

P. This Crime Policy will not apply to loss resulting directly or indirectly from trading whether or not in the name of the Insured or whether or not in a genuine or fictitious account, unless covered under Insuring Agreement A.1, A.2. or A.3..

Q. This Crime Policy will not apply to loss resulting directly or indirectly from fire, except:

1. loss of or damage to Money or Securities; or
2. damage to any safe or vault caused by the application of fire thereto in connection with any actual or attempted Safe Burglary when covered under Insuring Agreement C..

R. This Crime Policy will not apply to loss resulting directly or indirectly from the giving or surrendering of Money, Securities or Other Property in any exchange or purchase, whether or not fraudulent, with any other party not in collusion with an Employee, except when covered under Insuring Agreement E..

S. This Crime Policy will not apply to loss of Money, Securities or Other Property while in the custody of any Financial Institution, trust company, or similarly recognized place of safe deposit or armored motor vehicle company unless the loss is in excess of the amount recovered or received by the Insured under the Insured's contract, if any, with, or insurance carried by, any of the aforementioned.

T. This Crime Policy will not apply to loss of Money, Securities or Other Property held by an armored motor vehicle company for the Insured, and which is stored by such company overnight inside buildings used in the conduct of its business.

U. This Crime Policy will not apply to loss resulting directly or indirectly from nuclear reaction, nuclear radiation, radioactive contamination, biological or chemical contamination or to any related act or incident.

V. This Crime Policy will not apply to loss of Money, Securities or Other Property resulting directly or indirectly from kidnap, extortion or ransom payments (other than Robbery) surrendered to any person as a result of a threat.

W. This Crime Policy will not apply to loss resulting directly or indirectly from Forgery or alteration, except when covered under Insuring Agreements A.1., A.2., A.3., B., or H..

X. This Crime Policy will not apply to loss resulting directly or indirectly from Computer Fraud, except when covered under Insuring Agreements A.1., A.2., A.3., F.1., or H.1..


©2009 The Travelers Companies, Inc. All Rights Reserved

Y. This **Crime Policy** will not apply to loss under Insuring Agreements C. or D. resulting directly or indirectly from:

1. an accounting or arithmetical error or omission;
2. the loss of property from within any money operated device, unless the amount of **Money** deposited in it is recorded by a continuous recording device;
3. anyone, acting on the **Insured's** express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property;
4. damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them; or
5. damage to the **Premises** or its exterior or to containers of covered property by vandalism or malicious mischief.

Z. This **Crime Policy** will not apply to loss resulting directly or indirectly from the diminution in value of **Money, Securities** or **Other Property**.

AA. This **Crime Policy** will not apply to loss arising from any **Credit, Debit** or **Charge Card** if the **Insured**, the **Insured's Employee** or **Management Staff Member** has not fully complied with the provisions, conditions or other terms under which any card was issued.

BB. This **Crime Policy** will not apply to loss sustained by any **Subsidiary** or related **Employee Benefit Plan** or **Sponsored Plan**, occurring at any time during which such entity was not a **Subsidiary** or related **Employee Benefit Plan** or **Sponsored Plan**.

CC. This **Crime Policy** will not apply to loss sustained by the **Insured** or any **Subsidiary** to the extent it results in a benefit, gain or transfer to the **Insured** or any **Subsidiary**, except to the extent that such loss is covered under Insuring Agreement A.2..

## V. *CONDITIONS*

### A. GENERAL CONDITIONS

1. Territory Covered

Except as indicated in Item 5. of the Declarations,

a. the Company will cover loss the **Insured** sustains anywhere in the world, and

b. the Company will cover all of the **Insured's** offices and **Premises**, including any additional offices or **Premises** pursuant to Sections II. GENERAL AGREEMENTS B. ADDITIONAL OFFICES, C. CONSOLIDATION, MERGER OR PURCHASE OF ASSETS, and D. ACQUISITIONS in this **Crime Policy**.

2. Cooperation

The **Insured** must cooperate with the Company in all matters pertaining to this **Crime Policy** as stated in its terms, conditions and limitations.

3. Extended Period to Discover Loss

The Company will pay the **Insured** for loss that the **Insured** sustained prior to the effective date of cancellation or termination of this **Crime Policy**, which is **Discovered** by the **Insured**:

a. no later than 90 days from the date of cancellation or termination; and
b. as respects any **Employee Benefit Plan**, no later than one (1) year from the date of cancellation or termination.


©2009 The Travelers Companies, Inc. All Rights Reserved

Notwithstanding the above, this extended period to Discover loss terminates immediately upon the effective date of any other insurance obtained by the Insured replacing in whole or in part the insurance afforded by this Crime Policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

4. Other Insurance

This Crime Policy applies only as excess insurance over, and will not contribute with: (1) any other valid and collectible insurance available to any Insured unless such insurance is written specifically excess of this Crime Policy by reference in such other policy to the Policy Number of this Crime Policy; and (2) indemnification to which any Insured is entitled from any other entity other than any Insured. As excess insurance, this Crime Policy will not apply or contribute to the payment of any loss to the Insured until the amount of such other insurance or indemnity has been exhausted by loss covered thereunder. If the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this Crime Policy will apply to that part of the loss not recoverable or recovered under the other insurance or indemnity. This Crime Policy will not be subject to the terms of any other insurance.

Any loss that is applicable to this Condition A.4. is subject to both the applicable Single Loss Limit of Insurance and applicable Single Loss Retention shown in ITEM 5 of the Declarations.

If this Crime Policy replaces prior insurance that provided the Insured with an extended period of time after the termination or cancellation of such prior insurance in which to Discover loss, then, and only with respect to loss Discovered during such extended period but sustained prior to the termination of such prior insurance, the coverage afforded by this Crime Policy applies as follows:

a. the Company will have no liability for such loss, unless the amount of such loss exceeds the limit of insurance of that prior insurance; provided, that in such case, the Company will pay the Insured for the excess of such loss subject to the terms and conditions of this Crime Policy; and

b. any payment the Company makes to the Insured for such excess loss will not be greater than the difference between the limit of insurance of the Insured's prior insurance and the applicable Single Loss Limit of Insurance of this Crime Policy. The Company will not apply the applicable Single Loss Retention to such excess loss.

5. Ownership of Property; Interests Covered

a. The property covered under this Crime Policy except as provided in 5.b. below is limited to property:

i. that the Insured owns or leases;

ii. that the Insured holds for others:

(a) on the Insured's Premises or the Insured's Financial Institution Premises; or

(b) while in transit and in the care and custody of a Messenger; or

iii. for which the Insured is legally liable, except for property located inside the Insured's Client's Premises or the Insured's Client's Financial Institution Premises.

Notwithstanding the above, this Crime Policy is for the Insured's benefit only and provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this Crime Policy must be presented by the Insured.

b. If ITEM 5 of the Declarations indicates that coverage under Insuring Agreement A.3. Employee Theft of Client Property has been purchased, then the property covered under Insuring Agreement A.3. is limited to property:


©2009 The Travelers Companies, Inc. All Rights Reserved

i. that the **Insured's Client** owns or leases;

ii. that the **Insured's Client** holds for others; or

iii. for which the **Insured's Client** is legally liable;

while the property is inside the **Insured's Client's Premises** or the **Insured's Client's Financial Institution Premises**.

Notwithstanding the above, this **Crime Policy** is for the **Insured's** benefit only and provides no rights or benefits to any other person or organization, including the **Insured's Client**. Any claim for loss by the **Insured's Client** that is covered under this **Crime Policy** must be presented by the **Insured**.

6. Representation, Concealment, Misrepresentation or Fraud

No statement made by the **Insured**, whether contained in the application, underwriting information or otherwise, is deemed to be a warranty of anything except that it is true to the best of the knowledge and belief of the person making the statement.

This **Crime Policy** is void in any case of fraud by the **Insured** as it relates to this **Crime Policy** at any time. This **Crime Policy** is also void if the **Insured**, at any time, intentionally conceals or misrepresents a material fact concerning:

a. this **Crime Policy**;

b. the **Money, Securities** or **Other Property**;

c. the **Insured's** interest in the **Money, Securities** or **Other Property**; or

d. a claim under this **Crime Policy**.

7. Premiums

The **First Named Insured** is responsible for the payment of all premiums and will be the payee for any return premiums the Company pays.

8. Transfer of Rights and Duties Under this **Crime Policy**

Rights and duties under this **Crime Policy** may not be transferred without the Company's written consent except in the case of the death of a natural person **Insured**. If such person dies, then the decedent's rights and duties will be transferred to the decedent's legal representative, but only while acting within the scope of duties as the decedent's legal representative. Until a legal representative is appointed, anyone having proper temporary custody of the decedent's property will have all rights and duties but only with respect to that property.

B. PROVISIONS AFFECTING LOSS ADJUSTMENT AND SETTLEMENT

1. Limit of Insurance

a. Policy Aggregate Limit of Insurance

If ITEM 5 of the Declarations indicates that this **Crime Policy** includes a Policy Aggregate Limit of Insurance, then the Company's total liability for all loss **Discovered** during the **Policy Period** will not exceed such Policy Aggregate Limit of Insurance. The Policy Aggregate Limit of Insurance will be reduced by the amount of any payment made under the terms of this **Crime Policy**. If the Policy Aggregate Limit of Insurance is exhausted by any payment made for loss **Discovered** during the **Policy Period**, the Company will have no further liability for loss regardless of when **Discovered** and whether or not previously reported to the Company.


©2009 The Travelers Companies, Inc. All Rights Reserved

If applicable, the Policy Aggregate Limit of Insurance will be reinstated to the extent of any net recovery pursuant to Condition B.6. that is received by the Company during the Policy Period and before the Crime Policy Aggregate Limit of Insurance is exhausted. Recovery from reinsurance or indemnity, or both, for the Company's benefit will not be deemed a recovery as used herein. In the event that a loss of Securities is settled by the Company through the use of a Lost Securities Bond, such loss will not reduce the Crime Policy Aggregate Limit of Insurance, but any payment under the Lost Securities Bond reduces the Policy Aggregate Limit of Insurance under this Crime Policy.

The provisions of this Condition B.1.a. will not be applicable to Insuring Agreement A.2.

If ITEM 5 of the Declarations indicates that this Crime Policy does not include a Crime Policy Aggregate Limit of Insurance, then payment of loss under this Crime Policy will not reduce the Single Loss Limit of Insurance for other Single Losses.

b. Single Loss Limit of Insurance

The maximum Single Loss Limit of Insurance for each Insuring Agreement will not exceed the applicable amount set forth in ITEM 5 of the Declarations for such Insuring Agreement.

c. Special Limit of Insurance for Specified Other Property

The Company's liability for loss under Insuring Agreements C. and D. is limited as follows

i. the lesser of $25,000. or the amount shown as the Single Loss Limit of Insurance for any Single Loss involving precious metals, precious or semi-precious stones, pearls, furs, or completed articles made of or containing such enumerated materials that constitute more than half the value of such articles;

ii. the lesser of $25,000. or the amount shown as the Single Loss Limit of Insurance for any Single Loss, including damage to manuscripts, drawings or records of any kind, or the cost of reconstructing them or reproducing any information contained in them;

The Special Limit of Insurance for Specified Other Property is part of, and not in addition to, any applicable limit of liability.

d. Identity Fraud Expense Reimbursement Single Loss Limit of Insurance

The maximum limit of insurance per the Insured's Management Staff Member for each Identity Fraud covered under Insuring Agreement H.2. will not exceed the applicable Single Loss Limit of Insurance stated in ITEM 5 of the Declarations. All acts incidental to an Identity Fraud, any series of Identity Frauds, and all Identity Frauds arising from the same method of operation, whether committed by one or more persons, will be deemed to arise out of one act and will be treated as one Identity Fraud. If an act causes a covered loss under Insuring Agreement H.2. to more than one Management Staff Member, the applicable Single Loss Limit of Insurance and Retention under Insuring Agreement H.2. applies to each Management Staff Member separately.

e. Loss Covered Under More Than One Insuring Agreement of this Crime Policy

Subject to any applicable Crime Policy Aggregate Limit of Insurance, if any Single Loss is comprised of loss covered under more than one Insuring Agreement, the most the Company will pay the Insured for such Single Loss is the lesser of:

i. the actual amount of such Single Loss; or


©2009 The Travelers Companies, Inc. All Rights Reserved

ii. the sum of the Single Loss Limits of Insurance applicable to such Insuring Agreements applying to such loss.

2. Single Loss Retention

The Company will not pay the Insured for any Single Loss unless the amount of such Single Loss exceeds the Single Loss Retention shown in Item 5 of the Declarations. The Company will pay the Insured the amount of any Single Loss in excess of the Single Loss Retention, up to the Single Loss Limit of Insurance for the applicable Insuring Agreement.

If more than one Single Loss Retention applies to the same Single Loss, then only the highest Single Loss Retention will be applied.

No Single Loss Retention applies to any legal expenses paid to the Insured solely under Insuring Agreement B.

3. The Insured's Duties in the Event of a Loss

After the Insured Discovers a loss or a situation that may result in loss of or loss from damage to Money, Securities or Other Property that exceeds 25% of the Single Loss Retention, the Insured must:

a. notify the Company as soon as possible;
b. notify law enforcement authorities if the Insured has reason to believe that any loss, except for loss covered under Insuring Agreements A.1., A.2., A.3., or F.2., involves a violation of law;
c. submit to examination under oath at the Company's request and give the Company a signed statement of the Insured's answers;
d. give the Company a detailed, sworn proof of loss within 120 days; and
e. cooperate with the Company in the investigation and settlement of any claim.

Proof of loss under Insuring Agreement B. and H.1. must include: (1) an affidavit of Forgery setting forth the amount and cause of loss; and (2) the original written Covered Instruments or Personal Covered Instruments or a copy of such written instruments.

4. Valuation / Settlement

Subject to the applicable limit of insurance provision (Section V. CONDITIONS B. PROVISIONS AFFECTING LOSS ADJUSTMENT AND SETTLEMENT 1. Limit of Insurance) the Company will pay the Insured for:

a. loss of Money but only up to and including its face value, and, at the Company's option, pay for loss of Money issued by any country other than the United States of America:

i. at face value in the Money issued by that country; or

ii. in the United States of America dollar equivalent determined by the rate of exchange published in The Wall Street Journal on the day the loss was Discovered;

b. loss of Securities but only up to and including their value at the close of business on the day the loss was Discovered, and at the Company's option:

i. pay the Insured the value of such Securities or replace them in kind, in which event the Insured must assign to the Company all the Insured's rights, title and interest in those Securities; or


©2009 The Travelers Companies, Inc. All Rights Reserved

ii. pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the Securities; provided, the Company will be liable only for the cost of the Lost Securities Bond as would be charged for a bond having a penalty not exceeding the lesser of the value of the Securities at the close of business on the day the loss was Discovered;

c. loss of, or loss from damage to, Other Property or Premises including its exterior for the replacement cost without deduction for depreciation; provided, the Company will pay the Insured the lesser of the following:

i. the applicable Single Loss Limit of Insurance;

ii. the cost to replace Other Property or Premises including its exterior with property of comparable material and quality, and used for the same purpose; or

iii. the amount the Insured actually spends that is necessary to repair or replace such property;

provided, the Company will, at its option, pay the Insured for loss of, or loss from damage to, Other Property or Premises including its exterior, in the Money of the country in which the loss occurred, or in the United States of America dollar equivalent of the Money of the country in which the loss occurred determined by the rate of exchange published in The Wall Street Journal on the day the loss was Discovered.

The Company will not pay the Insured on a replacement cost basis for any loss or damage until such property is actually repaired or replaced, and unless the repairs or replacement are made as soon as reasonably possible after the loss or damage. If the lost or damaged property is not repaired or replaced, the Company will pay the Insured actual cash value on the day the loss was Discovered.

Any property that the Company pays the Insured for or replaces becomes the Company's property.

5. Records

The Insured must keep records of all Money, Securities, and Other Property under this Crime Policy so the Company can verify the amount of any loss.

6. Recoveries

a. All recoveries for payments made under this Crime Policy should be applied, after first deducting the costs and expenses incurred in obtaining such recovery, in the following order of priority:

i. first, to the Insured to reimburse the Insured for loss sustained that would have been paid under this Crime Policy but for the fact that it is in excess of the applicable Single Loss Limit(s) of Insurance;

ii. second, to the Company in satisfaction of amounts paid or to be paid to the Insured in settlement of the Insured's covered claim;

iii. third, to the Insured in satisfaction of any Single Loss Retention; and

iv. fourth, to the Insured in satisfaction of any loss not covered under this Crime Policy.

b. The value of all property received by the Insured from any source whatever and whenever received, in connection with any matter from which a loss has arisen, will be valued as of the date received and will be deducted from the covered loss.


©2009 The Travelers Companies, Inc. All Rights Reserved

c. Recoveries do not include any recovery:

i. from insurance, suretyship, reinsurance, security or indemnity taken for the Company's benefit; or

ii. of original Securities after duplicates of them have been issued.

7. Transfer of the Insured's Rights of Recovery Against Others to the Company

The Insured must transfer to the Company all the Insured's rights of recovery against any person or organization for any loss the Insured sustained and for which the Company has paid or settled. The Insured must also do everything necessary to secure those rights and do nothing after loss to impair them.

8. Legal Action Against the Company

The Insured may not bring any legal action against the Company involving loss:

a. unless the Insured has complied with all the terms of this Crime Policy;

b. until 90 days after the Insured has filed proof of loss with the Company; and

c. unless brought within two (2) years from the date the Insured Discovers the loss.

If any limitation in this Condition B.8. is deemed to be inconsistent with applicable law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

9. Liberalization

If the Company adopts any revision to the Crime Terms and Conditions of this Crime Policy that would broaden coverage and such revision does not require an additional premium or endorsement and the revision is adopted within 45 days prior to or during the Policy Period, the broadened coverage will apply to this Crime Policy as of the date the revision is approved for general use by the applicable department of insurance.

C. EMPLOYEE BENEFIT PLAN PROVISIONS – INFLATION GUARD

In compliance with certain provisions of ERISA:

1. if any Employee Benefit Plan is insured jointly with any other entity under this Crime Policy, the Insured must select a Single Loss Limit of Insurance for Insuring Agreement A.2. that is sufficient to provide an amount of insurance for each Employee Benefit Plan that is at least equal to that required if each Employee Benefit Plan were insured separately;

2. if the Insured is an entity other than an Employee Benefit Plan, any payment the Company makes to the Insured for loss sustained by any Employee Benefit Plan will be held by such Insured for the use and benefit of the Employee Benefit Plan(s) sustaining the loss; and

3. if two or more Employee Benefit Plans are covered under this Crime Policy, any payment the Company makes for loss:

a. sustained by two or more Employee Benefit Plans; or


©2009 The Travelers Companies, Inc. All Rights Reserved

b. of commingled Money, Securities or Other Property of two or more Employee Benefit Plans;

that arises out of a Single Loss is to be shared by each Employee Benefit Plan sustaining loss, in the proportion that the limit of insurance required under ERISA for each such Employee Benefit Plan, bears to the total of those limits of insurance.

4. If, at the inception date of this Crime Policy, or a preceding policy written by the Company that provided ERISA fidelity coverage for Employee Benefit Plans, the Insured has or had a Single Loss Limit of Insurance under such ERISA fidelity coverage for Employee Benefit Plans that is or was equal to or greater than the limit of insurance required under ERISA, the Single Loss Limit of Insurance under Insuring Agreement A.2. will equal the greater of the amount of the limit of insurance required by ERISA or the Single Loss Limit of Insurance set forth in Item 5. of the Declarations for Insuring Agreement A.2.

D. CANCELLATION OR TERMINATION

1. The Insured may cancel:

a. this Crime Policy in its entirety;

b. an Insuring Agreement; or

c. coverage for any Insured;

by mailing or delivering to the Company advance written notice of cancellation.

2. The Company may cancel:

a. this Crime Policy in its entirety;

b. an Insuring Agreement; or

c. coverage for any Insured;

by mailing or delivering to the First Named Insured written notice of cancellation at least 20 days before the effective date of cancellation if the Company cancels for nonpayment of premium; or 60 days before the effective date of cancellation if the Company cancels for any other reason.

The Company will mail or deliver the Company's notice to the First Named Insured's last mailing address known to the Company. Notice of cancellation will state the effective date of cancellation and the Policy Period will end on that date. If this Crime Policy or an Insuring Agreement is cancelled, the Company will send the First Named Insured any premium refund due. If the Company cancels this Crime Policy, the refund will be pro rata. If the Insured cancels, the earned premium will be computed in accordance with the customary short rate table and procedure. The cancellation will be effective even if the Company has not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. This Crime Policy terminates:

a. in its entirety immediately upon the expiration of the Policy Period;


©2009 The Travelers Companies, Inc. All Rights Reserved

b. in its entirety immediately upon exhaustion of the Policy Aggregate Limit of Insurance, if applicable; provided, that no Crime Policy termination under this Condition D.3.b. will be effective with respect to any Employee Benefit Plan covered under Insuring Agreement A.2.;

c. in its entirety immediately upon the voluntary liquidation or dissolution of the First Named Insured; provided, that no Crime Policy termination under this Condition D.3.c. will be effective with respect to any Employee Benefit Plan covered under Insuring Agreement A.2.; or

d. as to any Subsidiary immediately upon the Change of Control of such Subsidiary.

4. This Crime Policy terminates as to any Employee:

a. as soon as the Insured's partner, any of the Insured's Management Staff Members or any Employee with managerial or supervisory responsibility not in collusion with the Employee becomes aware of any dishonest or fraudulent employment related act involving an amount in excess of $10,000; or

b. 60 days after the Insured's partner, any of the Insured's Management Staff Members or any Employee with managerial or supervisory responsibility not in collusion with the Employee becomes aware of any dishonest or fraudulent non-employment related act; either of which acts were committed by such Employee in the Insured's service, during the term of employment by the Insured or prior to employment by the Insured, provided such dishonest or fraudulent non-employment related act involved Money, Securities or Other Property is in an amount in excess of $10,000.

E. CHANGES

Only the First Named Insured is authorized to make changes in the terms of this Crime Policy and solely with the Company's prior written consent. This Crime Policy's terms can be changed, amended or waived only by endorsement issued by the Company and made a part of this Crime Policy. Notice to any representative of the Insured or knowledge possessed by any agent or by any other person will not effect a waiver or change to any part of this Crime Policy, or estop the Company from asserting any right under the terms, conditions and limitations of this Crime Policy, nor may the terms, conditions and limitations hereunder be waived or changed, except by a written endorsement to this Crime Policy issued by the Company.

F. ENTIRE AGREEMENT

The Declarations, the application, the Crime Terms and Conditions, and any endorsements attached thereto, constitute the entire agreement between the Insured and the Company.

G. HEADINGS

The titles of the various paragraphs of this Crime Policy and its endorsements are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provision to which they relate.


©2009 The Travelers Companies, Inc. All Rights Reserved

**WEST CORZINE, LLP**
Ian Corzine, Esq. (State Bar No. 199642)
400 West Ventura Blvd., Ste. 205
Camarillo, California 93010-9141
Tel.: (805) 388-5887
Fax: (805) 384-1518
E-mail: icorzine@westcorzinelaw.com

Attorneys for Plaintiffs PESTMASTER SERVICES, INC.
and JEFFREY M. VAN DIEPEN

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, EAST DISTRICT – POMONA COURTHOUSE**

| | |
|---|---|
| PESTMASTER SERVICES, INC., a California Corporation, and JEFFREY M. VAN DIEPEN, and Individual,<br><br>Plaintiffs,<br><br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation, and DOES 1 to 50, Inclusive,<br><br>Defendants. | Case No. KC066085<br><br>*Hon. Bruce Minto – Dept. H*<br>*Judge of the Superior Court*<br><br>Action Filed: 06/11/2013<br><br>**PLAINTIFFS' NOTICE OF POSTING JURY FEES** |

Plaintiffs, PESTMASTER SERVICES, INC., and JEFFREY M. VAN DIEPEN, hereby post jury fees in the amount of One Hundred Fifty Dollars ($150.00).

Dated: June 17, 2013

**WEST CORZINE, LLP**

By: [signature]
IAN CORZINE, ESQ.
Attorney for Plaintiffs, PESTMASTER SERVICES, INC., and JEFFREY M. VAN DIEPEN

# EXHIBIT B

## PROOF OF SERVICE

STATE OF CALIFORNIA )
)
COUNTY OF VENTURA )

I am a resident of the aforesaid county; I am over the age of eighteen years and not a party to the within entitled action; my business address is 400 W. Ventura Boulevard, Suite 205, Camarillo, California 93010.

On the date shown below, I served the foregoing document described as **CIVIL CASE COVER SHEET, CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION, SUMMONS, COMPLAINT AND JURY TRIAL DEMAND** on the parties. I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Camarillo, California, addressed as follows:

**CORPORATION SERVICE COMPANY, Esq.**
**Travelers Casualty and Surety Company of California**
**2710 Gateway Oaks Drive, Suite 150N**
**Sacramento, California 95833**

West Corzine

_____ **MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

_____ **FACSIMILE:** By transmitting a true copy thereof by telecopier to the person or office, as indicated, at the address(es) and telecopier number(s) set forth above.

_____ **E-MAIL:** I caused a true copy thereof to be delivered via e-mail to the email address listed to the person as indicated, set forth above.

__X__ **PERSONAL DELIVERY:** I caused a true copy thereof to be delivered by hand to the person or office as indicated, of the addressee listed above.

__X__ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 17th day of June, 2013, at Camarillo, California.

[signature]
LYNSEY MCILLWAIN



EXHIBIT B

# PROOF OF SERVICE

STATE OF CALIFORNIA )
)
COUNTY OF VENTURA )

I am a resident of the aforesaid county; I am over the age of eighteen years and not a party to the within entitled action; my business address is 400 W. Ventura Boulevard, Suite 205, Camarillo, California 93010.

On the date shown below, I served the foregoing document described as **NOTICE OF POSTING JURY FEES** on the parties. I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Camarillo, California, addressed as follows:

**CORPORATION SERVICE COMPANY, Esq.**
**Travelers Casualty and Surety Company of California**
**2710 Gateway Oaks Drive, Suite 150N**
**Sacramento, California 95833**

West Corzine

_____ **MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

_____ **FACSIMILE:** By transmitting a true copy thereof by telecopier to the person or office, as indicated, at the address(es) and telecopier number(s) set forth above.

_____ **E-MAIL:** I caused a true copy thereof to be delivered via e-mail to the email address listed to the person as indicated, set forth above.

__X__ **PERSONAL DELIVERY:** I caused a true copy thereof to be delivered by hand to the person or office as indicated, of the addressee listed above.

__X__ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 17th day of June, 2013, at Camarillo, California.

[signature]
LYNSEY MCILLWAIN

 24850643

CSC®

CORPORATION SERVICE COMPANY®

SLM / ALL
Transmittal Number: 11293734
Date Processed: 06/19/2013

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Pamela Hoff<br>The Travelers Companies, Inc.<br>385 Washington Street, MC 515A<br>Saint Paul, MN 55102 |

| | |
|---|---|
| **Entity:** | Travelers Casualty and Surety Company of America<br>Entity ID Number 2319288 |
| **Entity Served:** | Travelers Casualty and Surety Company of America |
| **Title of Action:** | Pestmaster Services, Inc. vs. Travelers Casualty and Surety Company of America |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Los Angeles County Superior Court, California |
| **Case/Reference No:** | KC066085 H |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 06/18/2013 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Ian Corzine<br>805-388-5887 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscinfo.com

SUM-100

# SUMMONS
# (CITACION JUDICIAL)

ASSIGNED FOR ALL PURPOSES TO JUDGE BRUCE MINTO DEPT. N

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ORIGINAL FILED
JUN 11 2013
LOS ANGELES SUPERIOR COURT

NOTICE TO DEFENDANT:
(AVISO AL DEMANDADO):
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation, and DOES 1 to 50, Inclusive.

YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTÁ DEMANDANDO EL DEMANDANTE):
PESTMASTER SERVICES, INC., a California Corporation, and JEFFREY M. VAN DIEPEN, an Individual.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER: *(Número del Caso):* KC066085

Los Angeles Superior Court, ~~West~~ EAST District - ~~Santa Monica~~ POMONA Courthouse
400 Civic Ctr Plz
Pomona CA 91766

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ian Corzine, Esq (805) 388-5887
WEST CORZINE, LLP (805) 384-1518
400 West Ventura Blvd., Suite 205. Camarillo, CA 93010

DATE: *(Fecha)* JUN 11 2013 JOHN A. CLARKE Clerk, by *(Secretario)* C. MASCORRO, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Travelers Casualty and Surety Company of America, a Connecticut Corporation
under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:
4. ☒ by personal delivery on *(date)*: 6/18/13

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Martin Dean's Essential Forms™

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

74

Pestmaster vs. Travelers

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 444 South Flower Street, Thirty-First Floor, Los Angeles, California 90071-2901.

On July 15, 2013, I served the following document(s) described as **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441 (DIVERSITY)** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Ian Corzine, Esq.
West Corzine, LLP
400 West Ventura Boulevard
Suite 205
Camarillo, CA 93010-9141
Telephone: (805) 388-5887
Facsimile: (805) 384-1518

Attorneys for Plaintiffs Pestmaster Services, Inc. and Jeffrey M. Van Diepen

**BY MAIL:** I am "readily familiar" with Anderson, McPharlin & Conners' practice for collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on July 15, 2013, at Los Angeles, California.

Maureen Allen

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Michael Wilner.

The case number on all documents filed with the Court should read as follows:

**CV13- 5039 JFW (MRWx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself [ ] )
PESTMASTER SERVICES, INC., etc., et al.

**DEFENDANTS** ( Check box if you are representing yourself [ ] )
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, and Does 1 to 50

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Ian Corzine
West Corzine, LLP
400 West Ventura Blvd., Ste 205
Camarillo, California 93010
(805) 388-5887

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Gary J. Valeriano/Kenneth D. Watnick
Anderson, McPharlin & Conners LLP
444 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 688-0080

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- [ ] 1. U.S. Government Plaintiff
- [ ] 3. Federal Question (U.S. Government Not a Party)
- [ ] 2. U.S. Government Defendant
- [X] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

[ ] 1. Original Proceeding [X] 2. Removed from State Court [ ] 3. Remanded from Appellate Court [ ] 4. Reinstated or Reopened [ ] 5. Transferred from Another District (Specify) [ ] 6. Multi- District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [X] Yes [ ] No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [X] No [X] **MONEY DEMANDED IN COMPLAINT: $** $373,136.02

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of Implied Covenant of Good Faith and Fair Dealing, Breach of Contract, Violation of Cal. Bus. & Prof. Code Section 17200, et seq., Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Declaratory Relief.

**VII. NATURE OF SUIT** (Place an X in one box only).

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/Etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced & Corrupt Org.
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Info. Act
- [ ] 896 Arbitration
- [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

**CONTRACT**
- [X] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.)
- [ ] 153 Recovery of Overpayment of Vet. Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment

**REAL PROPERTY CONT.**
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Fed. Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury-Med Malpratice
- [ ] 365 Personal Injury-Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accomodations
- [ ] 445 American with Disabilities-Employment
- [ ] 446 American with Disabilities-Other
- [ ] 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus/Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Ret. Inc. Security Act

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405 (g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405 (g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY: Case Number: CV13-05039

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ NO ☐ YES

If yes, list case number(s): ______

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ NO ☐ YES

If yes, list case number(s): ______

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| **County in this District:*** | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Plaintiff Pestmaster and Plaintiff Van Diepen allege that they reside in the County of Inyo. |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| **County in this District:*** | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Defendant Travelers Casualty & Surety Company of America is a resident of Hartford County, Connecticut |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| **County in this District:*** | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Claims arose in County of Los Angeles. Also, venue allegations, in Paragraph 5, allege that one plaintiff resides in Los Angeles County. | |

***Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** [signature] DATE: July 15, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |



American LegalNet, Inc.
www.FormsWorkFlow.com